The State v. Moore.

THE STATE v. MOORE, *Appellant.*

1.  Criminal Law : LARCENY : INSTRUCTION. An instruction declaring that larceny is the taking and carrying away the property of another, from the possession of the owner, without his assent, with intent, on the part of the taker, to convert such property to his own use, or to deprive the owner of it, is incomplete and erroneous in failing to assert that such taking should have been wrongful or with a felonious intent.

2.  ———— : ———— : INTENT. It is the criminal intent which forms the distinguishing feature between larceny and trespass.

3.  ———— : ———— : POSSESSION. Where one has the absolute property in goods at the time they are stolen, though he be not in actual possession of them, it will be larceny to feloniously carry them away against his consent.

4.  ———— : ———— : ————. Possession by a bailee of property is in legal contemplation the possession of the bailor, though the custody of the goods be in the former, and, when bailed goods are stolen by a stranger, ownership may be laid either in the bailor or bailee.

5.  ———— : ———— : INSTRUCTION, ASSUMPTION BY OF UNDISPUTED FACT. An instruction which assumes the existence of an undisputed fact is not, for that reason, erroneous.

The State v. Moore.

6. —— : —— : RECENT POSSESSION OF STOLEN PROPERTY. In a prosecution for larceny it may be shown· that the accused is possessed of other stolen property as tending to corroborate the inference of guilty possession of the particular property which he is charged with stealing.

7. —— : —— : FLIGHT. Flight, escape or attempt to escape, or to effect prison breach, all constitute legitimate evidence, where the guilt of the party on trial is in question. The weight of such evidence depends upon the individual circumstances of each case, and its relevancy or competency does not depend upon the fact that the flight, escape, etc., were made in the endeavor to avoid some specific or threatened prosecution.

8. —— : —— : RECENT POSSESSION OF STOLEN PROPERTY. An instruction to the effect that the possession of personal property recently after the same has been stolen raises the presumption that the person so in possession stole it, and this presumption becomes conclusive, unless it is overcome or refuted by the circumstance of the taking or possession or by proof reasonably satisfactory that such possession was innocently or honestly acquired, correctly declares the law where no evidence is introduced as to the defendant's good character.

9. —— : —— : ——. What one found in the possession of goods recently stolen says in explanation of such possession immediately upon being discovered, and before he has time to concoct a story, is a part of the *res gestæ* and receivable in evidence as such ; but this principle does not apply where the defendant with ample time to prepare a self-serving story goes upon the stand and makes his explanation.

10. —— : —— : ——. In a prosecution for larceny where the accused is found in possession of the property shown to have been recently stolen, it is not necessary to a conviction that there should be evidence of an actual taking.

11. —— : —— : INSTRUCTIONS. It is not error to refuse instructions announcing principles embraced in others given.

*Appeal from Jackson Circuit Court.*—HON. H. P. WHITE, Judge.

REVERSED AND REMANDED.

*Robinson, O'Grady & Harkless* for appellant.

(1) The court's definition of larceny forms a good definition of trespass but falls far short of defining

The State v. Moore.

larceny.   Sackett's Inst. to Juries, sec. 8, p. 741 and p. 743, sec. 11 ; *Nutzell v. State*, 60 Ga. 264 ; *State v. Green*, 81 N. C. 560 ; *Mason v. State*, 32 Ark. 238 ; *Hart v. State*, 57 Ind. 102 ; *Com. v. Hurd*, 123 Mass. 438 ; *State v. Wood*, 46 Ia. 116 ; 63 Ind. 223 ; *Holser v. State*, 5 S. W. Rep. 523 ; *Hamlit v. Com.*, 5 S. W. Rep. ( Ky.) 366 ; *People v. Raschke*, 15 Pac. Rep. 13 ; Kelly's Crim. Law, sec. 601, 328 ; *State v. Warden*, 94 Mo. 648.   ( 2 ) The jury are erroneously told that Hardesty's possession of the horse must be considered as the possession of Campbell.   It assumes that proof of possession and title has been made without allowing the jury to pass on it. *Alexander v. State*, 5 S. W. Rep. 840 ; *Hall v. Adkins*, 59 Mo. 144 ; 2 Bish. Crim. Law, sec. 808, p. 457 ; 2 Russ. on Crimes, 152.   ( 3 ) The third instruction is erroneous because there is no evidence from which the jury could believe that defendant had stolen any other horse, or from which they could infer he had any other stolen horse in his possession.   The language of the instruction assumes that defendant had a stolen horse in his possession other than the one named in the indictment. ( 4 )   The fourth instruction is not the law.   Whar. Crim. Ev., sec. 750 ; *State v. Mallon*, 75 Mo. 357 ; *Butler v. State*, 80 Ind. 400.   ( 5 )   The fifth instruction for the state is erroneous.   It is only necessary that a reasonable doubt be raised in the minds of the jury by the defendant's explanation of his possession of recently stolen property.   If the explanation is reasonable in itself, then the state must, in some other way, contradict the explanation, or the jury must acquit.   *Bean v. State*, 5 S. W. Rep. 525 ; *State v. Warden*, 94 Mo. 648 ; *Smith v. State*, 6 S. W. Rep. 40 ; *Young v. State*, 3 South Rep. 881 ; *State v. Manley*, 38 N. W. Rep. 415 ; Greenl. Ev., sec. 32 ; *People v. Flyn*, 15 Pac. Rep. 102.   ( 6 )   The court's seventh instruction should not have been given so far as it applies to the wife.   *State v. Underwood*, 75 Mo. 234.   ( 7 )   The eighth instruction

The State v. Moore.

is not the law. A reasonable doubt may be raised as well by want of evidence, as by the evidence. 80 Ind. 402. The instructions asked by the defendant should have been given. *State v. Boone,* 70 Mo. 649 ; *McDaniel v. State,* 7 S. W. Rep. 249 ; *Willis v. State,* 6 S. W. Rep. ( 8 ) The court should have instructed the jury, that the defendant's possession of the horse is conclusively presumed to be innocent, until, by other evidence, the property is shown, beyond a reasonable doubt, to have been stolen. ( 9 ) The evidence in this case, as to the fact of a larceny having been committed, is wholly circumstantial, and hence, the court should have instructed the jury, as to their duty in considering circumstantial evidence. Thompson on Trials, secs. 2508–2518 ; *Fuller v. State,* 7 S. W. Rep. 330 ; *Guajardo v. State,* 7 S. W. Rep. 331 ; *Bond v. State,* 4 S. W. Rep. 580 ; *Schuler v. State,* 4 S. W. Rep. 581. ( 10 ) The evidence is not sufficient to sustain the verdict. *Taylor v. State,* 18 Tex. App. 489 ; *McIntosh v. State,* 18 Tex. App. 284 ; *Williams v. State,* 5 S. W. Rep. 129.

*John M. Wood,* Attorney General, for the State.

( 1 ) Flight after an offense has been committed raises the presumption of guilt, and it is not necessary to show that the flight was on account of the particular charge ; this is for the consideration of the jury in determining what weight to give to the evidence, and does not affect its competency. *State v. Frederic,* 69 Me. 400 ; Whar. Cr. Ev. [ 9 Ed.] sec. 750 ; *State v. Bush,* 95 Mo. 199 ; *State v. Williams,* 54 Mo. 170 ; 1 Bish. Crim. Proc., sec. 1250. The testimony of the officers as to their being after defendant, meeting him and attempting to arrest him, and his escape, was competent. ( 2 ) Declarations of a defendant in his own favor are inadmissible. Whar. Cr. Ev. [ 9 Ed.] sec. 690. The refusal of the court to permit Wineberg, a

witness for defendant, to state what defendant said at his stable at the time he said he had the horses there, was not error. ( 3 ) The court gave eight instructions on the part of the state, in which it correctly declared the law to the jury. *First.* The first is the general instruction as to the offense charged. R. S., secs. 1307 and 1308 ; 2 Bish. Crim. Law, sec. 7580*n ; State v. Owen*, 78 Mo. 367. *Second.* The second, as to the possession of the horse by Hardesty being treated as the possession of Campbell. 2 Bish. Crim. Law, secs. 784, 794 ; 2 Bish. Crim. Proc., sec. 721. *Third.* The third, as to how far the possession by defendant of the other horse stolen at the same time may be considered by the jury. *State v. Castor*, 93 Mo. 242 ; *State v. Phelps*, 91 Mo. 478, and authorities cited. *Fourth.* The fourth, as to the presumption arising from flight. *State v. King*, 78 Mo. 555, and authorities cited. *Fifth.* The fifth, as to the presumption arising from the possession of property recently after the same has been stolen. *State v. Kelly*, 73 Mo. 608 ; *State v. Owen*, 79 Mo. 619 ; *State v. Phelps*, 91 Mo. 478. *Sixth.* The sixth, as to the credibility of the witnesses. *State v. Thomas*, 78 Mo. 327. *Seventh.* The seventh, as to the credibility of the testimony of defendant and his wife. R. S., sec. 1918 ; *State v. Miller*, 93 Mo. 263 ; *State v. McGuire*, 69 Mo. 197. *Eighth.* The eighth, as to reasonable doubt. *State v. Nueslin*, 25 Mo. 111 ; *State v. Gonce*, 69 Mo. 600 ; *State v. Thomas*, 78 Mo. 327 ; *State v. Gann*, 72 Mo. 374. The instructions given by the court fairly presented the whole case to the jury, and it was not error to refuse the instructions prayed for by defendant. *State v. Smith*, 80 Mo. 516 ; *State v. Walton*, 74 Mo. 270.

SHERWOOD, J.—The defendant, indicted for stealing a horse belonging to Luther C. Campbell, on trial was found guilty, and, his punishment assessed at two years imprisonment in the penitentiary, has appealed to this court.

The State v. Moore.

The testimony, in brief, is the following: The horse stolen was a large sorrel horse, belonging to Luther C. Campbell, and worth about ninety dollars; Campbell lived in and was engaged in the drug business in Kansas City, Missouri; the horse got his left hind foot hurt along in August, 1888, and on the twenty-ninth day of that month Campbell sent him to the pasture of Mr. Hardesty, which was in another part of the city and distant about one and a half miles from where Campbell lived; Hardesty took the horse to pasture, and he remained there until Friday, the twelfth day of October, 1888, when he and another horse, which was being pastured there, were stolen; there was a barbed-wire fence around the pasture, and the only place discovered where the horse could have gotten out was a place in the fence where the lower wires were tied together; by this means, and the top wire being raised up, they could have been taken out; after the horse was stolen, the owner found him in the possession of Mr. Clariday, fifteen miles north of the city, and took him home; the horse was traded to Mr. Clariday by defendant on Saturday morning, the thirteenth of October; on the day previous, defendant, being indebted to Mr. Clariday, told him that some one had traded for five horses for him, and he would be able to deliver him four in payment of his indebtedness; he said he hadn't seen them yet and could not describe them, and could not deliver them that day, but would do so on the first boat in the morning. The next morning Mr. Clariday went to the ferry, getting there about daylight, and crossed the river two or three times, looking for defendant, before he could find him; finally met him on the opposite side of the river—defendant having crossed before daylight, the reason he did not meet him earlier, and no one saw him when he was crossing.

Defendant said he did not bring but two horses. He had them tied back about two hundred yards, and

not in sight of the ferry. The two horses in his pos-session were described as the same horses that were stolen the night before from Hardesty's pasture. When Clariday traded with him he wanted him to go down to see Tining, as he wanted a witness, and defendant at first declined, claiming that he was in a hurry. Officers Park and Burns after this saw defendant and another man, and attempted to arrest them, and notwithstand-ing they were fired at several times they succeeded in making their escape, but the next morning they arrested defendant.

The defense undertook to show a purchase of the horses by defendant from a stranger—a mover. Defend-ant, in attempting to account for his possession of the horse, claimed he had bought him, together with five or six other horses, from a mover; that he had traded land for them. Said that he had bought them on Friday morning, before he had the talk with Clariday about delivering them to him, and that at the time he had this conversation the horses were in his stable at home; and he denied escaping or running from the officers.

At the conclusion of the testimony the court of its own motion gave these instructions:

"The defendant is charged with grand larceny. It is alleged that he stole a certain horse, belonging to the witness, Luther C. Campbell. The larceny of a horse differs from other larcenies in this, the stealing of a horse is grand larceny, without respect to the value of the horse, provided it is of any value whatever, and the punishment for the offense is imprisonment in the state penitentiary for a term of years not less than two, and not exceeding seven, years. The punishment, usually, for grand larceny is imprisonment in the state peniten-tiary for a term ranging from two to five years. Lar-ceny, for the purposes of this trial, is the taking, and carrying away, of the horse of another from the posses-sion of the owner, without his assent, with intent, on

the part of the person doing such taking and carrying away, to convert such horse to his own use, or to deprive the owner of his property in it.   The indictment was filed on the sixteenth day of November, 1888.   Barring the foregoing view, and considering a basis for, and a part of, these instructions, the court submits to you the further instructions, to-wit:

"1.   If you shall believe, and find, from the evidence in this cause, that, at the county of Jackson, state of Missouri, any time within three years next before the day on which the indictment in this cause was filed, the defendant, either alone or with the assistance of another, or others, took and carried away the horse described and mentioned in the indictment, the same being the property of, or belonging to, the witness, Luther C. Campbell, and shall believe that such taking and carrying away was from the possession, and without the assent, of the said Campbell, and shall further believe that the intent of the defendant, in so taking and carrying said horse away, was to convert the same to his own use, or to deprive the owner of his property, then you will find the defendant guilty as charged, and assess his punishment according to the directions respecting punishment, heretofore and hereinabove stated to you.

"2.   According to the evidence adduced, you must consider and treat the possession of the horse named in the indictment, by the witness Hardesty, as a possession by, and on the part of, the witness, Luther C. Campbell.

"3.   Although you may believe that the defendant stole one, or several horses, you must find him not guilty, unless you find that he took the horse named in the indictment, in a manner, under circumstances, and with an intent, such as to constitute a larceny, with respect of such horse, according to the law, as stated in these instructions.   And the matter of the defendant having in his possession a horse stolen at the same time

the one named in the indictment was stolen, provided it was stolen, shall be wholly disregarded by you, further than as such possession may serve to enable you to form a judgment as to the nature and character of the defendant's possession of the horse so named in the indictment.

"4.   Although you may believe that the defendant fled, or escaped, at the time the police officers attempted to arrest him, yet you must not consider such flight, or escape, as establishing the guilt or innocence of the defendant.   Such flight, or escaping, is only a circumstance for you to take into account, and give such weight, in connection with all of the facts and circumstances, as you deem proper.

"5.   Possession of personal property recently after the same is proven to have been stolen, raises the presumption that the person so in possession is the person who stole the same, and this presumption becomes conclusive unless it is overcome, or refuted, by the circumstances of the taking, or the circumstances of the possession, or by proof, reasonably satisfactory, that such possession was innocently or honestly acquired.   If, therefore, you shall believe that the horse named in the indictment was stolen, and that recently thereafter the defendant was in possession of such horse, you must find that defendant is the person who stole such horse, unless you shall further find that the presumption above named, as running with the possession of stolen property, is overcome, or refuted, by the circumstances of the stealing of such horse, or by the circumstances under which the defendant was in the possession of the same, or by an explanation of such possession by proof which reasonably satisfies you that such possession was innocently or honestly acquired. In the matter of explaining, or accounting for, the possession of property proved to have been stolen, the burden is for the defendant; but he is not required to

establish the honesty or innocence of his possession beyond a reasonable doubt. It is only necessary that evidence upon such matter should, as heretofore stated to you, be such as reasonably satisfies you.

"6. You are sole judges as to the credibility of witnesses and the weight of testimony, and if, upon a consideration of all of the evidence before you, you conclude that any witness has sworn wilfully falsely as to any material matter involved in this trial, you may disregard, or treat as untrue, the whole, or any part, of such witness' testimony.

"7. The defendant and his wife are competent witnesses in the defendant's behalf, and you must take their testimony into account, and give it such weight, in connection with all the other evidence before you, as you deem proper. But, in determining the credit you will give them, as witnesses, you may consider the fact that one is the defendant, and the other is his wife.

"8. The defendant is presumed to be innocent, until the contrary is established beyond a reasonable doubt. If, therefore, upon the consideration of all the evidence before you, you entertain a reasonable doubt as to the guilt of the defendant, you must give him the benefit of such doubt, and find him not guilty. You will observe, the doubt to authorize an acquittal on that ground alone must, as is stated to you, be a reasonable one; it must, also, be one fairly deducible from the evidence, considered as a whole. The mere possibility that the defendant may be innocent will not warrant an acquittal on the ground of a reasonable doubt."

Defendant, saving exceptions to the foregoing instructions, excepted, also, to the refusal of the following instructions:

"1. The court instructs the jury that the evidence, in this cause, does not show any actual taking of the property by any one. That the evidence only tends to show that the defendant was afterward found in the

possession of the property. Now, if you believe, from the evidence, that the defendant has fairly accounted for the possession of the property, then he is not guilty.

"2. The court instructs the jury that, if the defendant traded for the property, and paid value for it, and the same appeared to be in lawful possession of the one from whom he procured it, then the defendant is not bound to inquire into the question, how the party came in possession, or where he got them.

"3. The court instructs the jury that, if they find, from the evidence, that the defendant obtained the property by trading for it, and did not know of its being stolen, then he had the right to trade for the same, and, even though you might find that his agent may have known that the property was stolen, yet, unless the defendant knew it, he is not guilty."

I. "Larceny may be defined to be the fraudulent taking and carrying away of a thing without claim of right, with the intention of converting it to a use other than that of the owner, without his consent." 1 Wharton's Cr. Law [9 Ed.] sec. 862.

"The most approved definition of this offense, at common law, is that which is given by Mr. East; namely, 'the wrongful or fraudulent taking and carrying away, by any person, of the mere personal goods of another, from any place, with a felonious intent to convert them to his ( the taker's ) own use, and make them his own property, without the consent of the owner.' But even this definition, though admitted by PARKE, B., to be the most complete of any, was thought by him to be defective, it not stating what was the meaning of the word 'felonious,' in that connection, which, he proceeded to say, 'might be explained to mean that there is no color of right or excuse of the act ;' adding, that the 'intent' must be to deprive the owner not temporarily, but permanently, of his property." 3 Greenleaf's Ev. [ 14 Ed.] sec. 150.

The crime is otherwise defined: Lord COKE: "Larceny, by the common law, is the felonious and fraudulent taking and carrying away, by any man or woman, of the mere personal goods of another." 3 Inst. 107.

Hawkins: "A felonious and fraudulent taking and carrying away, by any person, of the mere personal goods of another." 1 Hawk. P. C. [Curw. Ed.] p. 142.

Blackstone: "The felonious taking and carrying away of the personal goods of another." 4 Bl. Com. 229.

GROSE, J: "The felonious taking the property of another without his consent and against his will, with intent to convert it to the use of the taker." *Rex v. Hammon*, 2 Leach [4 Ed.] 1083, 1089.

EYRE, B: "The wrongful taking of goods, with intent to spoil the owner of them, *causa lucri*." 2 East P. C. 553.

Chitty says: "To constitute this offense, therefore, in any form, there must be a taking from the possession, a carrying away against the will of the owner, and a felonious intent to convert it to the offender's use." 3 Chitty's Cr. Law, 917.

Bishop says: "Larceny is the taking and removing, by trespass, of personal property which the trespasser knows to belong, either generally or specially, to another, with the intent to deprive such owner of his ownership therein; and, perhaps it should be added, for the sake of some advantage to the trespasser." 1 Bishop's Cr. Law, sec. 566.

Roscoe says: "Property is the right to the possession, coupled with an ability to exercise that right. Bearing this in mind, we may, perhaps, safely define larceny as follows: The wrongful taking possession of the goods of another with intent to deprive the owner of his property in them. It is not necessary to add to this definition the words 'without any claim of right by the taker,' as that is excluded by the latter branch

of the definition relating to the intent. Nor is it necessary to say that the taking must be 'against the will of the owner,' because that is included in the word 'wrongful.'" 2 Roscoe's Cr. Ev. [8 Ed.] 816.

From these definitions compiled from various sources it must be evident that the instruction in question lacked completeness, and was, therefore, faulty. Under its guidance it was not necessary that the taking should have been *wrongful* or with a *felonious intent*. The property may have been taken under a claim of right, and to deprive the owner of his property in it, under an honest belief that the taker was himself the owner, and still, under the terms of the instruction, the taker could be found guilty of larceny. It is the criminal intent which forms the distinguishing feature between theft and trespass; but under the instruction no such intent was essential to the defendant's guilt. This view is fully illustrated by the case of *Witt v. State*, 9 Mo. 663, where the instruction was : "If the jury believe from the evidence that the horse belonged to Smith, and that the prisoner took and carried away the horse, without the knowledge or consent of Smith, with the intention of selling him, or of converting him to his own use, they ought to find him guilty. And although the jury may believe, from the evidence, that Smith, in the contract spoken of, had agreed that the prisoner might ride the horse, yet if they believe the prisoner took the horse with the intention of selling him, or of converting him to his own use, they ought to find him guilty." And Scott, J., after discussing the constituent elements of larceny and of the necessity of a felonious intent, said : "The taking the personal goods of another without this intent may be a trespass, but it cannot amount to larceny. The prisoner then may have done every act supposed by the instruction of the court, without being guilty of a felony. The instruction defined a trespass, and not a larceny and it was error to have told the jury that the

commission of the acts mentioned in it rendered the prisoner guilty of larceny." The doctrine of this case was approvingly followed in *State v. Shermer*, 55 Mo. 83. See, also, *State v. Gray*, 37 Mo. 463; Sackett on Instructions, 535, 539.

II. Where a party has the absolute property in the goods at the time they are stolen, though he be not in actual possession of them, it will be larceny to feloniously carry them away against his consent. 3 Chitty's Cr. Law, 917. And the possession by a bailee of the property is in legal contemplation the possession of the bailor, though the custody of the goods be in the former; and, when bailed goods are stolen by a stranger, ownership may be laid either in bailor, or bailee, principal or agent. Wharton's Cr. Law [9 Ed.] sec. 932a, and cases cited; 2 Bishop on Cr. Law, sec. 824, and cases cited.

The testimony clearly showed Hardesty to be the owner of the pasture, and the bailee of the horse, and there was no conflict of testimony on this point, so that the second instruction, in assuming the existence of an undisputed fact, was not erroneous on that account, nor was it erroneous as to the law it declared, as the authorities cited show. But, as already seen, the absolute property in the horse being in Campbell, it was entirely immaterial in whose possession he was at the time he was stolen.

III. There were circumstances already related, from which the jury might well infer that the mare which was with the horse in Hardesty's pasture, and was afterwards found in defendant's possession at the same time the horse was, had been stolen. The instruction, though not very clearly drawn, does not assume that either of the animals were stolen. And the rule of law is that where the accused is possessed of other stolen property, this is a circumstance which may well serve to corroborate the inference of guilty possession of that particular property which he is charged with stealing.

3 Greenleaf's Ev. [14 Ed.] sec. 31; *State v. Castor*, 93 Mo. 242.

IV. Flight, escape or attempt to escape, or to effect prison breach, all constitute legitimate evidence, where the guilt of the party on trial is in question. How much weight it is to possess depends, of course, upon the individual circumstances of each case. Whart. Cr. Ev. [9 Ed.] sec. 750; *State v. Williams*, 54 Mo. 170; *State v. Jackson*, 95 Mo. 623; 1 Bishop's Cr. Proc., sec. 1250. And the relevancy or competency of such evidence does not at all depend upon the fact that the flight or attempted flight, escape, etc., were made in the endeavor to avoid *some specific or threatened* prosecution. *State v. Rush*, 95 Mo. 199; *State v. Phillips*, 24 Mo. 475; *State v. Frederic*, 69 Me. 400. Evidence of flight, etc., is admissible on the ground that it commonly betrays a consciousness of guilt and this induces endeavors to escape. Nothing is more common in criminal prosecutions than the introduction of such evidence, though the flight occurred not only before any prosecution was threatened, but before the community became aware that any crime had been perpetrated. So true it is that,

"Suspicion always haunts the guilty mind;
The thief doth fear each bush an officer."

It is this result of this "experience of common life," which gave origin to the unfavorable presumption arising from flight.

The foregoing remarks sanction the giving of the fourth instruction, of which complaint is made; and it sanctions, also, the admissibility of the testimony of the officers upon which that instruction is based.

V. The fifth instruction, as to the presumption arising from the recent possession of stolen property, lays down the established law of this court. *State v. Kelly*, 73 Mo. 608, and cases cited; *State v. Owens*, 79 Mo. 619; *State v. Phelps*, 91 Mo. 478. There was no evidence introduced of the defendant's good character;

but if there had been, the instruction would not have been sufficiently comprehensive; as it was, the instruction was as broad as the evidence. *State v. Kelly,* *supra.* The other instructions given are the usual ones, and require no comment.

VI. At the common law, when stolen goods were discovered in the possession of a party recently after being stolen, what he said in explanation of his possession of the property, immediately upon its discovery with him, and before he had time to concoct a story, is a part of the *res gestæ,* and receivable as such. Whart. Cr. Ev. [9 Ed.] sec. 761; 2 Bishop's Cr. Proc., sec. 746. But obviously this principle does not apply to cases where the defendant, with ample time to prepare a self-serving story, comes on the stand as a witness, and makes his explanation. The first instruction asked by the defendant was, therefore, properly refused, as being based on an incorrect theory of the law. It was also properly refused because it asked that the jury be unequivocally instructed that there was no evidence of an *actual* taking of the property. There was no necessity that there should be evidence of an actual taking, and, therefore, the instruction was misleading.

As to the other instructions asked, they were sufficiently covered by those given.

For the error mentioned, the judgment must be reversed and the cause remanded. All concur.