THE STATE v. LAWLER, *Appellant.*

Division Two, November 19, 1895.

1. **Criminal Practice:** ROBBERY: INDICTMENT. An indictment under Revised Statutes, 1889, section 3530, for robbery, need not charge that the person alleged to have been robbed was put in fear, where it charges that the act was committed with violence.

2. **Criminal Law:** ROBBERY: VIOLENCE: EVIDENCE. Evidence on a trial for robbery to the effect that the accused and another entered a saloon left in charge of two women, and, without speaking, started behind the bar, and, when an attempt was made by the women to intercept them, the accused forcibly held one of the women and disabled the other by a kick, while his companion secured the cash drawer, when both ran out, shows sufficient violence to sustain a conviction, without proof of actual fear.

3. ——: ——: INDICTMENT: OWNERSHIP OF PROPERTY. An indictment for robbery must charge the ownership of the property in the person alleged to have been robbed. It is insufficient to allege ownership in one person, and the taking in the presence of and against the will of another.

4. ——: ——: ——: ——.  An indictment for robbery may allege the ownership of the property to be in one having such a special property or right of possession in or to it as will enable him to maintain an action for it, if taken out of his custody; otherwise ownership must be alleged to be in the real owner.

5. ——: ——: ——: ——: PRACTICE IN SUPREME COURT.  Where an indictment for robbery alleges that the property taken belonged to one person and was taken in the presence of and out of the possession of another, it is bad on its face and may be reached by motion in arrest, or will be held bad on appeal without such motion, the error being apparent of record.

*Appeal from St. Louis Criminal Court.*—HON. D. W. SHACKLEFORD, Judge.

REVERSED AND REMANDED.

*John A. Gernez* and *J. C. Robertson* for appellant.

(1) Robbery is a larceny aggravated by the manner of its accomplishment, and is compounded of larceny and force.  R. S. 1889, sec. 3530; *State v. O'Conner*, 105 Mo. 121; *State v. Brannon*, 55 Mo. 63; *State v. Jenkins*, 36 Mo. 372; *State v. Brown*, 104 Mo. 365; *State v. Sommers*, 12 Mo. App. 374; Bishop on Crim. Law [8 Ed.], sec. 1156.  (2)  Hence a jury may convict a defendant on trial for robbery in the first degree of larceny.  See above cases.  (3)  That the owner is frightened on account of the theft is immaterial.  To constitute robbery the theft must be in consequence of fright.  *Rex v. Greasil*, 1 C. and P. 504; *People v. MacGinty*, 24 Hun (N. Y.), 62; *State v. John*, 5 Jones (N. C.), 163; *State v. Graham*, 55 N. H. 152; *People v. McCloskey*, 5 Park. Cr. Rep. (N. Y.) 299; *State v. Clark*, 12 Mo. App. 593; *State v. Wills*, 16 Mo. App. 553.

*R. F. Walker*, attorney general, and *C. O. Bishop* for the state.

(1) The indictment is in proper form and follows the language of the statute. R. S. 1889, sec. 3530. It is difficult to see wherein this indictment is defective, unless the statute can be so strictly construed as to require the indictment to aver that the property taken was his or hers, who was the victim of the assault; and even then this indictment is good after verdict. *State v. Montgomery*, 109 Mo. 645. (2) It is conceded by the motion for a new trial that the instructions given were correct in every particular, but it is claimed that the court erred in failing to instruct for larceny. Now, the facts given in the evidence on the part of the state are wholly undisputed, save only as to the identity of appellant as the perpetrator of the offense. It is evident that the two men who entered that saloon at that time did so for the purpose of stealing what money was in the cash drawer, although they may not have at the time meditated violence; but when, in the mind of the appellant, it became necessary to use violence to effect the theft, and he resorted to it to accomplish the original common design, then the contemplated larceny became a robbery as to both, and both were equally guilty of the actual taking and actual violence and intimidation. *State v. Walker*, 98 Mo. 95; *State v. Brown*, 104 Mo. 365; *State v. Moore*, 106 Mo. 480. And it is clear from the evidence that it was by reason of the violence and intimidation used by appellant that the confederate succeeded in getting away with the money. *State v. Stewart*, 29 S. W. Rep. (Mo.) 986. (3) The motion for new trial concedes that no improper or incompetent testimony was admitted on the part of the state, and no proper or competent testimony excluded on the part of the appellant.

SHERWOOD, J.—Being adjudged guilty of robbery in the first degree and his punishment assessed at imprisonment for five years, defendant appeals to this court.

This prosecution is founded on section 3530, Revised Statutes, 1889, which reads in this way: "Every person who shall be convicted of feloniously taking the property of another from his person, or in his presence, and against his will, by violence to his person, or by putting him in fear of some immediate injury to his person, shall be adjudged guilty of robbery in the first degree."

The indictment, so far as necessary to quote it in illustration of this opinion, is the following:

"With force and arms, in and upon one Lizzie Sexauer, feloniously, did make an assault, and the said Lizzie Sexauer in fear of an immediate injury to her person then and there feloniously did put, and by force and violence $25 good and lawful money of the United States of the value of $25, all of the goods and property of George Sexauer in the presence of and against the will of the said Lizzie Sexauer, by then and there putting her in fear of an immediate injury to her person, then and there feloniously and violently did rob, steal, take, and carry away."

"WILLIAM ZACHRITZ,
"Circuit Attorney."

The testimony in substance is this: George Sexauer was the proprietor of a saloon and sample room at number 2236 Wash street, in the city of St. Louis, and resided with his wife, Lizzie Sexauer, up stairs; his wife's niece, Lizzie Grof, was living with them at the time of the alleged offense. On Friday evening, May 3, 1894, Mr. Sexauer left the saloon about 9 o'clock to retire for the night. His wife and her niece came

VOL. 130 mo—24

down and took charge; there were about $25 in money in a cash drawer behind the counter. The women sat together in the rear of the saloon sewing and chatting, and were there alone. Between 9 and 10 o'clock defendant and another man hastily entered the place, and, without saying a word, started to go behind the counter. Miss Grof saw them and gave the alarm, when both ladies sprang to their feet and rushed forward to intercept the men. Defendant pushed Miss Grof aside, seized Mrs. Sexauer by her hands and held her forcibly against the wall, and when Miss Grof undertook to pass him toward the other man, gave her a vicious kick upon the shin, forcing her over a chair and causing her such pain as to disable her. The other party got behind the counter, drew out the cash drawer entire and ran out of the saloon with it. Defendant then let Mrs. Sexauer go, and ran out also. The cash drawer, emptied of its contents, was found near the saloon that night. Defendant was arrested Sunday, May 5, about 2 o'clock A. M., and was fully identified by the ladies. His confederate was never identified, nor was any of the money recovered.

The testimony on the part of the defense tended to show that defendant was elsewhere at the time of the robbery; that he was of good character, and that the women had failed to identify him at the time of the arrest, but had been prevailed upon by police officers to swear that he was the man. Defendant, testifying in his own behalf, claimed to have been elsewhere all that night; disclaimed all knowledge of the robbery, and stated under oath that "the man that done this robbery is down in the jail now."

1. There is abundant evidence in the foregoing statement to show such circumstances of violence as are sufficient to sustain a prosecution for the crime of robbery, for it is said to be unnecessary to lay a putting

in fear in the indictment or to prove the circumstance of actual fear upon the trial; for if the fact be laid to be done violently and against the will, the law in circumstances like those in the case at bar, *in odium spoliatoris* will presume fear. 2 Russ. Cr. [9 Ed.] *122; *State v. Stinson*, 124 Mo. 447; Foster, 128, 129; 5 Burn's Justice, 778; 2 East, P. C. 711, 719.

2. The crime of robbery at common law has had frequent definition. Hale says: "Robbery is the felonious and violent taking of any money or goods from the person of another, putting him in fear, be the value thereof above or under one shilling." Vol. 1, 532. Hawins gives a definition substantially identical with the one just quoted. Vol. 1, 147. East defines the crime thus: "A felonious taking of money or goods, to any value, from the person of another, or in his presence, against his will, by violence or putting him in fear." Vol. 2, 707.

It will be observed that the definition as given by East is more full than those given by the other authors, in that the words "or in his presence," and "against his will" are used alone by East and not by the others, in defining the crime. The words "in his presence" were added to the words "from his person" by judicial construction, as substitutionary of, and tantamount in meaning to "from his person," and this in order to prevent an evasion of the law. East, 723, 725, 728.

The common law authorities all agree that in order to constitute the crime of robbery, the taking must be laid in the indictment, and proven on the trial to be from the person or in the presence of the *owner*. Thus Russell: The taking need not be immediately from the person of the owner; * * * But it is clear, that the property must be taken in the presence of the owner," etc., etc., giving instances. 2 Russ. Cr. [9 Ed.] *106, *107; 2 East, Ch. 16, sec. 126, p. 707; Roscoe's Crim.

Ev. [7 Ed. 908, 911; 3 Greenl. Ev. [14 Ed.], secs. 224, 228; Barb. Cr. L. [2 Ed.], 143.

In an early case it was ruled that if a man's servant be robbed of his master's goods in sight of his master, it shall be taken for a robbing of the master. *Wright's* case, Style, 156.

In *Rex v. Francis*, 2 Str. 1015, where some thieves gently struck the hand of the prosecutor, whereby some money which he had taken out of his pocket to give change, fell to the ground, and he offering to take it up, they threatened to knock his brains out, whereupon he desisted, and the thieves *"immediately"* took it up, all of which matters were set forth in a special verdict, the judges were of opinion that, inasmuch as it was not sufficiently expressed in the verdict that the money was taken by the thieves in the *"sight or presence of the owner,"* that therefore they could not be held guilty of *robbery*.

In Tennessee this case arose: The dwelling house of the prosecutor was entered while he and his family were asleep; and he was aroused by the presentation of a pistol at his head, and a demand for money. Alarmed and excited, he sprang from his bed, and he and his sister, Winnie Barnly, in whom, the property taken is laid in one count of the indictment, rushed out of a door and fled to a neighboring house. In their absence, and before their return, one of the prosecutor's daughters was compelled to go up stairs and bring down their father's box, which was broken open in the presence of the remaining members of the family, and some money, articles of clothing, etc., taken away. At the trial, evidence to the effect aforesaid was introduced and the defendants requested the court to instruct the jury that "to constitute the offense of robbery, the goods or property must be taken from the person of the party named in the indictment, as the owner, or

in his presence and against his will. And if the jury believed, from the evidence, that the property alleged to have been taken belonged to Stephen Barnly (the prosecutor) or Winnie Barnly, and they became frightened and ran off, nothing being taken from their persons, or in their presence—that it would not be robbery, but larceny, and they could not find the defendants guilty under the indictment."

This instruction was refused, but the court gave the following one: "If you believe the defendants put Stephen Barnly in fear, and caused him to run off, and then took from him his money, or hat and other goods, which was in his possession, this would be robbery. The same principle applies to Winnie Barnly's property. So, if Stephen's goods were left in possession of his wife, and the defendants put her in fear, or by violence took possession of the goods or money, left in her possession, this would be robbery. After quoting from some of the authorities already cited, it was held that no robbery had been committed, by reason of the absence of the owners at the time the taking occurred. *Crews v. State*, 3 Coldw. 350.

The common law precedents of indictments bear out the idea that the property must be alleged to be that of the party robbed. Thus Train and Heard give this form:

"Indictment for robbery at common law:

"The jurors, etc., upon their oath present, that C. D., late of, etc., on the first day of June in the year of our Lord——, with force and arms, at B. in the county of S., in and upon one J. N., feloniously did make an assault, and the said J. N., in bodily fear and danger of his life, then and there feloniously did put, and one gold watch of the value of one hundred dollars, of the goods and chattels of the said J. N., from the person and against the will of the said J. N. then and

there feloniously and violently did steal, take, and carry away; against the peace, etc." Precedents of Indict., 461. A similar form is given by Chitty, which he says was settled by a very eminent crown lawyer. 3 Chit. Cr. L., 806.

That it is necessary to allege the property to be that of the person named as the *owner* in the indictment is conclusively shown by the further necessity of establishing this fact by proving it on the trial. 3 Greenl. Evid., sec. 224. Surely nothing need be proved, except it be alleged. And the same rule which governs as to alleging and proving ownership in *robbery*, prevails as to proving and alleging it in larceny. 2 Bishop Crim. Proc., sec. 1006; 2 *Ib.* New Cr. L., sec. 1159. If the *owner is known*, the prisoner must be tried on an indictment for stealing the goods of the *owner by name.* 1 East P. C. 651, sec. 88; *Long's Case,* Cro. Eliz. 490; *Com. v. Morse,* 14 Mass. *loc. cit.* 218.

There is no doubt but that goods may be laid to be either in the general owner or in a special owner with the like result of conviction where the evidence corresponds with the allegation. Thus they may be laid to be in a bailee, pawnee, carrier or the like. *State v. Moore,* 101 Mo. 316. But in such category, a *wife* or *servant* can not be included, inasmuch as neither has the property or possession, and in consequence of this a person indicted for stealing goods laid in the indictment as that of the wife or servant, must be acquitted on *that* indictment. 2 East P. C., sec. 90; 2 Bishop Cr. Proc., sec. 726; Kelley, Cr. L., p. 435.

Russell says: "It is necessary that there should be in some person a sufficient ownership of the things stolen; and that they should be stated in the indictment as the goods and chattels or property of such person." 2 Russ. Cr. [9 Ed.] *282. "Where goods are in the possession of the wife, they must be laid as the goods

of her husband; thus if A. is indicted for stealing the goods of B., and it appears that B. was a *feme covert* at the time, A must be acquitted." *Ib.* *287.    To the same effect is 1 Hale, P. C. 513, though he adds the party may be indicted *de novo* for stealing the goods of the husband.

Abundant    adjudications    announce    the    same doctrine  enunciated  by  the  text-writers.    Thus  in *Com. v. Williams*, 7 Gray, 337, the property which was charged to have been stolen, was alleged to be that of a man who, it turned out in evidence, was the husband of a certain woman, and it was objected that as the property was "found in her possession, it should have been averred to have been *her property.*"    But SHAW, C. J., speaking as the organ of the court, ruled that notwithstanding the alteration in the common law, by statutory provision allowing *femes covert* to have property in their own right, etc., that still such enactment did not overthrow the usual presumption that personal property held by the wife is that of her husband, and that such presumption must be rebutted by the party whose case requires it, by proving property in the wife.    This was the precise point adjudicated in that case.    A previous ruling to the same effect in *Com. v. Cullins*, 1 Mass. 116, where the indictment charging larceny, laid the property in the first count in the wife, and in the second in the husband who had been absent in the East Indies, six or seven years, and it was ruled that the prisoner could not be convicted on the first count.

In *Com. v. Clifford*, 8. Cush. 215, the *only* point in judgment was that the indictment for robbery did not allege *whose property* it was that was taken.    It was loosely remarked, however, in that case that if the "indictment were for the common law offense of robbery, it would be fatally defective for want of the averments that the articles alleged to have been stolen and

taken from Pendexter were his property or the property of some third person," and 2 Hawk., chapter 25, section 71, is cited in support of the observation, which the authority cited does not do. The remark adverted to is not incorrect if it be taken to mean such "*third person*" is a *bailee* or the like; otherwise it is.

In California it has been ruled that an indictment alleging in effect the robbery of money "from the person and control" of Wyckoff, etc., was good, though it also alleged that the money was the "property and money of B. F. Whiting." *People v. Shuler*, 28 California, 490. But that ruling was not put upon common law grounds at all, but was based on the reason that, as the indictment does state the money was taken from the possession of Wyckoff, the law deems that possession rightful, and therefore the right of Wyckoff to the possession needed not to be stated in the indictment, and for this position an express statutory enactment is cited which provides: "Neither presumption of law, nor matters of which judicial notice is taken, need be stated in an indictment." Laws, 1851, page 239, section 248. And it is to be observed that in that state, "the criminal code has worked the same change in pleading in criminal actions, which has been wrought by the civil code in civil cases." *People v. King*, 27 California, 507.

After all, then, the *Shuler* case is in line with the common law authorities; but for the indulgence of a statutory and otherwise unauthorized presumption, the indictment in that case must have been ruled bad. But still, with all that, it seems quite odd that Whiting's name should have been obtruded on the indictment, *cui bono*.

In Massachusetts it has been ruled in an indictment for larceny which charges that the property of a wife may be sustained by proof of larceny of property

of her husband in her possession.    *Com. v. McLaughlin,* 103 Mass. 435.    But this ruling is also bottomed on a special statutory provision declaring that:

"In the prosecution of offenses in relation to or affecting real or personal estate, it shall not be deemed a variance, if it is proved on the trial, that at the time when the offense was committed, either the actual or constructive possession or the general or special property in the whole or any part of such real or personal estate, was in the person or community alleged to be the owner thereof."    General Statutes, chapter 172, section 12.    This last section, formerly known as section 12, Revised Statutes, chapter 133, has been on the statute books of that state since or before 1845.    This statute was said to have been passed to cure the defect which defeated the indictment in *Wade's* case, 17 Pick. 395.

In Virginia, however, where a statute has been enacted substantially identical with, and evidently derived from, that of Massachusetts before quoted, it has been ruled in an indictment for larceny that the name of the owner of the property charged to have been stolen must be stated; and if it appears that the person so stated to be the owner was a married woman at the time of the larceny, it is error and the prisoner should be acquitted.    MONCURE, P., after adverting to the familiar rules requiring that in an indictment for larceny, the ownership of the goods stolen must be stated as the property of such owner, and that the goods of a married woman must be laid as the goods of her husband, remarks: "This statute was not intended to dispense, and does not dispense, with the necessity of stating in an indictment for larceny the name of the owner of the property stolen, nor to enable any person to be such owner who was not capable of being so at common law.    Its only object was to get rid of the difficulties which often existed at common law in regard to

the proper person to be stated as the owner of the property in an indictment for larceny or other offenses against property.    It therefore declares that in all such cases, 'it shall be sufficient to prove that when the offense was committed, the actual or constructive possession, or a general or special property in the whole or any part of such estate, was in the person or community alleged in the indictment or other accusation to be the owner thereof.'    But the person named in the indictment as owner of the property must still, under the statute, as under the common law, be a person competent in law to be such owner."    *Hughes v. Com.*, 17 Gratt. 565.

Other illustrations may now be given, supporting the view that unless a person alleged in an indictment for larceny to be the owner of property stated therein to have been stolen, occupies a position other than that of servant, the prosecution of the thief on such indictment must fail.    Thus in *Reg. v. Green*, 37 English Law and Equity, 597 the property in two pairs of women's boots was laid in the son about fourteen years of age, who resided with his father, who supported him, received no wages, and worked at the shop under his father's orders; that on the day of the larceny, the father returned home and he was left in charge of the stall, and on this state of facts it was ruled that the son was but the servant of his father in whom the possession remained, and therefore the goods were improperly laid in the son, and the prisoner went acquit on that indictment, but was remanded and convicted on an indictment which laid the goods in the father.

So, too, in *Rex v. Hutchinson*, Russ. & Ryan, C. C. 412, where a servant had the custody and care of a chapel, the title thereof being vested in trustees, and he having the only key to the chapel, could not be properly described as the owner of certain articles which belonged in the chapel.

In *State v. Jenkins*, 78 N. C. 478, in an indictment of the larceny of certain meat belonging to a railroad company, the property was laid in the depot agent of the company who had possession and control of it for the company for the use of its hands, it was held the prosecution on that indictment could not be maintained, because the agent had neither a general nor a special property in the articles stolen.

So in *Hagood v. State*, 59 Ala. 49, it was ruled that the overseer of another's plantation, could not be alleged to be the owner of corn grown thereon in order to a prosecution for the larceny thereof, because he was to be deemed a servant of his employer, and therefore had no special property in the grain stolen.

In *State v. Ayer*, 3 Foster, 301, it was ruled that where leather was delivered to a person to be manufactured into shoes, which were to be delivered to the employer, if while the shoes remain in the hands of the manufacturer they be stolen, they may be laid to be his property in an indictment for their theft, and this because by reason of his employment he had a special property in the shoes.

On the same principle, wherever it is shown that the person alleged to be the owner had such special property, or that he held it to do some act upon it, or for the purpose of conveyance, or in trust for the benefit of another, would be sufficient to support an allegation of ownership in an indictment. *State v. Somerville*, 21 Me. 14.

In *State v. Addington*, 1 Bailey, 310, the mare stolen never had been in the possession of the trustee of the wife, but in that of the husband who held the animal in trust for the benefit of his wife, and with the presumed assent of the trustee, and therefore the property in the mare was well laid in the husband as the owner, when the mare was stolen.

In *Owen v. State*, 6 Humph. 330, the horse escaped from the premises of its owner, and entered on the premises of a neighbor who directed his servant to put the horse into his stable, but this was done to prevent the destruction of his corn in the field, and upon this it was ruled that the taker up of the horse might well be stated to be his owner in an indictment charging his servant with the theft of the animal.

In short, the turning point and test rule in all cases of this sort may be formulated into this question: Did the party alleged in the indictment to be the owner have such a special property or right of possession in the goods as would enable him to maintain an action for them if taken out of his custody? If this interrogatory be answered affirmatively, then prosecution will lie in the name of such alleged owner; otherwise not. *Com. v. Morse*, 14 Mass. 217; *Ludden v. Leavitt*, 9 Mass. 104; *Warren v. Leland*, *Ib.* 265; *Dillenback v. Jerome*, 7 Cow. 294; 2 Bishop, Crim. Proc., sec. 722.

Tested by the rule thus laid down, it must be obvious to even casual observation that Mrs. Sexauer had no such special ownership in the property taken as would admit of her prosecuting an action for it, were it taken, and this is shown by the evidence disclosing that she is but the wife of the real owner.

But, further, the indictment not only fails to allege ownership of any kind in her, but on the contrary it alleges it to be in her husband. Now, how robbery could be committed in the absence of the real or special owner, is rather difficult to understand. In *Davidsons'* case, 38 Mo. 374, the property was laid in John Day as owner, and it was held that as the evidence showed that Day was not present when the "rifle gun" was taken, that therefore an instruction asked by

defendant that he could not be convicted of robbery in the first degree should have been given.

Here the indictment shows that the money alleged to have been taken was not taken in the presence of the only one whom the indictment mentions as owner. This makes the indictment bad on its face and obnoxious to a motion in arrest, or sufficient to cause a reversal in this court without such motion, the error being apparent of record. *State v. Meyers*, 99 Mo. 107.

The judgment should be reversed and the cause remanded. · All concur.

