THE STATE v. O. MONTGOMERY, alias FRANK GALE, Appellant.

Division Two, March 23, 1904.

1. **ROBBERY FROM CLERK: Money of Employer.** Where (prior to the enactment of the statute of 1903) a clerk in charge of a drugstore had authority to receive money in payment of goods sold and to give other money in exchange, and defendant enters such store in the absence of its owner, and compels such clerk by putting him in fear, etc., to give him money from the money-drawer and belonging to the owner of the store, an indictment which charges defendant with robbing the clerk of the clerk's money, is sufficient. (Overruling State v. Lawler, 130 Mo. 366, and State v. Morledge, 164 Mo. 522.)

2. ——: ——: **Possession: Information.** As against a wrongdoer possession is title. So that as against a robber a clerk in charge of a store in the absence of the owner is in possession of the money of his master therein by virtue of his employment, within the meaning of the statute, and that possession is a sufficient ownership to justify the laying of said money in the clerk and to meet the requirement of the statute that said money should be laid as *his.*

3.  **INFORMATION:** Affidavit: Waiver.  A failure to object to the information as not being verified amounts to a waiver of the affidavit.

Appeal from Jackson Criminal Court.—*Hon. Jno. W. Wofford,* Judge.

AFFIRMED.

*A. C. Durham* and *L. E. Durham* for appellant.

(1) The information charges that the money taken from Mills was his property.  The evidence shows he had no interest in the same and that the taking was not in the presence of the true owner.  Such variance is fatal.  State v. Lawler, 130 Mo. 366; State v. Morledge, 164 Mo. 522.  (2)  The court erred in giving State's instruction 2.  It is not predicated on the evidence. State v. Tice, 90 Mo. 112; State v. Chambers, 87 Mo. 409; State v. Thompson, 83 Mo. 260; State v. Parker, 106 Mo. 225; State v. Herrell, 97 Mo. 111.  (3)  The instruction offered by defendant is a correct declaration of law, based on the evidence , and the court erred in refusing it.  State v. Lawler, supra; State v. Morledge, supra.

*Edward C. Crow,* Attorney-General, and *Bruce Barnett* for the State.

On behalf of the State we have nothing to say in opposition to the contention made by appellant.  The information alleges the money taken to have been the property of Mills, and the proof shows it to have belonged to Radford, who was not present at the time. Such a variance was held to be fatal by this court in the Lawler case, and in the Morledge case the court refused to consider the question.  State v. Lawler, 130 Mo. 366; State v. Morledge, 164 Mo. 522.

GANTT, P. J.—The defendant was convicted in the criminal court of Jackson county of robbery in the first degree and sentenced to ten years' imprisonment in the penitentiary.

The information is in two counts, as follows:

"Now comes Roland Hughes, prosecuting attorney for the State of Missouri, in and for the body of the county of Jackson, and upon his official oath informs the court that O. Montgomery alias Frank Gale, whose Christian name in full is unknown to said prosecuting attorney, late of the county of Jackson aforesaid, on the 4th day of January, 1903, at the county of Jackson, State of Missouri, in and upon one William I. Mills, unlawfully and feloniously, did make an assault, and twenty-two dollars in lawful money of the United States of the value of twenty-two dollars, the money and property of said William I. Mills, and in the presence of the said William I. Mills and against the will of said William I. Mills, then and there by putting said William I. Mills in fear of immediate injury to his person, feloniously did rob, steal, take and carry away; against the said peace and dignity of the State.

"And the prosecuting attorney aforesaid, upon his oath aforesaid, further informs the court that O. Montgomery, alias Frank Gale, whose Christian name in full is unknown to said prosecuting attorney, late of the county aforesaid, at the county of Jackson and State of Missouri, on the 4th day of January, 1903, in and upon one William I. Mills, unlawfully and feloniously did make an assault, and twenty-two dollars in lawful money of the United States of the value of twenty-two dollars, the money of T. J. Radford, which said money was then and there in the care, custody and control of the said William I. Mills as the clerk of the said T. J. Radford, and in the presence of the said William I. Mills, then and there being and against the will of the said William I. Mills, then and there by putting the said

William I. Mills in fear of immediate injury to his person, feloniously did rob, steal, take and carry away; against the peace and dignity of the State.''

At the trial, the State was required to elect, and the second count was dismissed.

The facts in evidence were these:

On the 4th day of January, 1903, about 10:15 p. m., the defendant entered the drugstore of Mr. T. J. Radford, located at the corner of Ninth and Locust streets in Kansas City, Missouri. Mr. Radford was at that time at his home in the suburbs of the city, and William I. Mills, his clerk, was in charge of the store. The defendant walked in, pointed a revolver at Mills, and commanded him to throw up his hands. The clerk complied with the demand, while defendant took about $22 in money from the cash register of the store. Putting the money in his pocket, defendant backed out of the store and escaped. Two days afterwards he was arrested by a detective and identified by Mills. The evidence of the State further showed that the money alleged to have been taken was not the property of said Mills, as charged in the information, but was the property of his employer, Mr. Radford; that Mills was a clerk in the store and had charge of the store and the money in the register, with authority to put the money received on sales therein and to take cash therefrom to make change and had no other interest in the money taken or in the store, and was not under the terms of his employment required to make good the loss of this money.

*Mills* testified:

"Q. Did Mr. Radford hold you responsible for that money afer it was gone? A. No, sir; he didn't.

"Q. You were merely clerking there? A. Yes, sir.

"Q. You have no interest in that store? A. None whatever.

"Q. The money belonged to Mr. Radford? A. Yes, sir."

The defendant introduced no evidence, but bottoms his appeal upon the fact of the variance between the allegation in the information that the money taken was the property of Mills, and the proof that it belonged, not to Mills, but to his employer, Radford.

The court refused to give the following instruction offered by the defendant, to which action the defendant excepted at the time:

"The court instructs the jury that if they find from the evidence in this case that the money alleged to have been stolen was not the property of the said William I. Mills but the property of T. J. Radford and that he had no specific property therein, then they will acquit the defendant of the charge of robbery as alleged in said information."

As the law of this State had been adjudged prior to March 24, 1903 (Laws 1903, p. 162), to constitute the crime of robbery the taking must be laid in the indictment and proven on the trial to be from the person or in the presence of the owner; either the true owner, or one having such a special property therein as a bailee, pawnee, carrier or the like, as would enable him or her to maintain an action therefor if taken out of his or her custody. [State v. Lawler, 130 Mo. 366; State v. Morledge, 164 Mo. 522.]

And it was expressly ruled in the case last cited that a clerk, such as Mills was in this case, had no such special property in the goods as would authorize the ownership of the property to be laid in him.

Since the enactment of the statute of March 24, 1903, the offense can be charged for the taking from the wife, servant, clerk or agent.

We are again confronted with the question whether the evidence in this case is sufficient to sustain the charge of robbery.

The defendant relies upon State v. Morledge, 164

Mo. 522, and if that case is to be followed he is entitled to a reversal.   The decision in that case was predicated upon State v. Lawler, 130 Mo. 366.   There is, however, this distinction between the two cases.   In State v. Lawler, the indictment alleged an assault upon and putting in fear of Mrs. Sexauer, and the taking of the goods and money of George Sexauer, whereas in the Morledge case, the indictment charged the assault upon and putting in fear of John Resmussen and the taking of the money of said John Resmussen.

In an exhaustive decision by Judge SHERWOOD in Lawler's case as to the essentials of a good indictment for robbery, the conclusion was reached that the money or goods must be laid in the general or special owner, and it was said it was sufficient that they be laid in a bailee, pawnee, carrier *or the like.*   [State v. Moore, 101 Mo. 316.]   "But in such category a *wife* or *servant* can not be included."   That the great weight of authority at common law sustains Judge SHERWOOD's opinion as to the possession of a wife at common law, we think there can be no doubt, because the possession of the wife was prima facie the possession of the husband, and by the common law she could have neither real nor personal property in possession.   [Hughes v. Com., 17 Gratt. 565; Wade's Case, 17 Pick. (Mass.) 395; Com. v. Williams, 7 Gray 337; Com. v. Cullins, 1 Mass. 116.]   But this doctrine has been so modified by statute that it can no longer be said to obtain in most of our States.

The question presented by this record and in the Morledge case is whether a clerk left in charge of, and entrusted with the care of his employer's cash, with authority to sell his goods and make change out of the drawer, is not a person in whom the ownership of such money may be laid as against a robber?

Certainly if he is over sixteen years of age he may be convicted of embezzlement of such money if he fraudulently converts it to his own use without the con-

sent of his master or employer. What then was the relation of Mills to the cash left in his possession in the cash register and what his obligation in respect thereto? It is no answer to the question to show that his employer, Mr. Radford, did not hold him responsible for the money which was taken from his possession by putting him in fear of his life by presenting a revolver at his head.

Is it the law that if the president or cashier of a bank should be temporarily absent from the bank, a robber may with impunity enter the bank and present a revolver or gun at the clerks left in charge and take all the money of the bank and escape punishment for robbery? Or, to state it differently, if a gentleman confide to his friend his watch for convenience, and after they part a robber places his revolver at the friend's head and by putting him in fear takes the watch, there can be no robbery because the real owner was not present, and was not put in fear and as the friend was not a bailee for hire and makes no claim of any property rights other than his possession, therefore, the ownership can not be laid in him?

The question is one of much practical moment.

Mr. Mills bore a contract relation to Mr. Radford, by which, in consideration of his wages as clerk, the law, in the absence of an express agreement, implied a promise on his part to exercise care and prudence in the management of Mr. Radford's store in the course of his employment. Certainly the law imposed upon him the obligation of collecting the price of the goods he sold and of accounting for the same. He was for that purpose entrusted with the cash register and by virtue of his employment he was authorized to take money out of the register to make change when he sold an article, and was required to place his receipts in the register. He was an agent for hire, and Mr. Radford had, by the course of business adopted, delivered to him the possession of the cash in the register in law as effectually as

if he had gone through the most formal act of delivery. The delivery in this case while not the transfer of the absolute title to Mr. Radford's money, was a transfer of its possession with its accompanying temporary rights.

Even bailees without reward have an interest sufficient to enable them to sue tortfeasors and to maintain trover against all strangers to the bailment who wrongfully invade their possession. Possession is prima facie evidence of right and the party who seeks to dispossess should show a better title, and moreover the possessor sustains a responsibility to the true owner.

The language of the statute defining robbery in the first degree is, "Every person who shall be convicted of feloniously taking *the property of another* from his person, or in his presence, and against his will, by violence to his person, or by putting him in fear of some immediate injury to his person, shall be adjudged guilty of robbery in the first degree." [Sec. 1893, R. S. 1899.]

The weight of the argument that the person robbed must have a general or special property in himself and that possession alone is not sufficient lies in the words of the statute "taking *the property of another* from *his* possession."

This identical question arose in Brooks v. People, 49 N. Y. 436, on a statute couched in the exact words of our statute, and it was ruled by the Court of Appeals of New York that as against a robber the person robbed was the owner of the goods in his possession and custody whereof he was robbed. Judge PECKHAM in that case traced the history of this section in the New York code and found that the revisors had said they defined robbery "according to 2 East P. C. ch. 16, secs. 125, 129; the material ingredient in this offense being that it is done against the will by violence, or by fear of immediate injury" to the person.

The learned judge pointed out that the elementary common law writers generally did not insert in their definition of this crime that the property should belong

to the person robbed. [1 Hale P. C. 532; 4 Black. Com., 241; 2 Russell on Crimes (4 Ed.), 98, p. in mar. 867; Hawkins, 95, ch. 34; Com. v. Clifford, 8 Cush. 215.] The conclusion was reached that as against a robber the possession was sufficiently paid in the person robbed.

The same question again arose on a statute in the same words in State v. Adams, 58 Kan. 365, and the court very aptly says: ''The characteristic of robbery, distinguishing it from other forms of larceny, lies in the violence inflicted on the person of one in possession of the property, or in putting him in fear of injury to his person. So far as the mere taking is concerned, the offense is neither greater nor less than if filched in any other way. The gravity of the offense lies in the breach of the peace, in the personal violence inflicted, or the terror excited in the mind of the individual robbed. At common law, it was never held that the property taken must belong to the person robbed. It was sufficient that the property belonged to the person robbed or some third person. As against the robber, a servant has the same right, and rests under the same duty, to preserve and defend his possession of the property, that the owner has. He is the custodian, and has a right to oppose, with violence if necessary, the violence offered by the robber. As against him, he stands as owner; and we think the statute intended to extend to him the full measure of protection that it gives to the owner or bailee. The principles governing civil actions for the recovery of property wrongfully taken have no application in a case of robbery.''

In State v. Lawler, 130 Mo. loc. cit. 374, it was said: ''There is no doubt but that goods may be laid to be either in the general owner or in a special owner with the like result of conviction where the evidence corresponds with allegation. Thus they may be laid to be in a bailee, pawnee, carrier or the like.''

We find on examination the foregoing is a sub-

stantial quotation from East on Pleas of the Crown, chap. 16, sec. 90, p. 652, but the learned author was treating of larceny, not of robbery. It is further said: "But if it appear in evidence that the party whose goods they are laid to be has neither the property nor *the possession* (and for this purpose the possession of a *feme covert* or servant is, generally speaking, the possession of the husband or master) the prisoner ought to be acquitted." But in the same section it is said: "If A send his servant with money, and afterwards waylay and rob him, with intent to charge the hundred, the felony is complete." East says: "And even in this latter case, I see no objection to laying the property of the goods in the servant; for though in general it may be said that he has no property in them as against his master, although he has against every other person; yet having a clear right to defend his possession against A's unlawful demand, the special property remains *in the servant*. But a taking from the servant of the goods or money of his master, *in his presence,* by putting in fear, is a taking from the master, and the offender may be indicted of robbing him." So that when the whole context is read it does not support the conclusion reached in State v. Lawler, supra, that under no circumstances can the goods be laid in the servant, but on the contrary his possession is sufficient as against a robber or trespasser and all others but the true owner. And while we think that the rule laid down in State v. Morledge, that the party in whom the goods are laid must have such a special interest in them by lien or otherwise that *would enable him to maintain an action for their possession or injury thereto* against any other person than the true owner, does not apply to a prosecution for robbery, yet even in a civil case "the law is that a person possessed of goods as his property has a good title against every stranger, and that one who takes them from him, having no title in himself,

is a wrongdoer, and can not defend himself by showing that there was title in some third person; for against a wrongdoer *possession is a title."* [Lord CAMPBELL in Jefferies v. Railroad, 5 E. & Bl. (85 Eng. Com. L.) 802; Armory v. Delamirie, 1 Strange 505; Cooley on Torts, (2 Ed.), p. 520; Cobbey on Replevin, sec. 786; Rosencranz v. Swofford Bros. D. G. Co., 175 Mo. 518; Hoagland v. Amusement Co., 170 Mo. 335.]

Mills, then, being lawfully in possession by virtue of his employment as clerk for Mr. Radford of the money in the cash register, had a sufficient ownership thereof as against the defendant to justify the laying of said money in him for the purposes of this prosecution against the defendant who robbed him of the same and a sufficient ownership to meet the requirement of the statute that said money should be laid as *his.*

The information properly charged the robbery of Mills and laid the goods in him; otherwise, there can be no robbery in such circumstances.

Upon a reconsideration we are satisfied that the possession of Mr. Mills as the clerk in charge of the store with the implied obligation of exercising ordinary care of his employer's goods and property was such as authorized the money to be laid in him and that our opinion in State v. Morledge ought no longer to be followed as the law of this State and that so much of State v. Lawler as holds that the possession of a wife or servant in circumstances such as shown by the record in this case is not sufficient in a prosecution for robbery to justify the laying of the goods in them should also be overruled.

The information is not verified, but no objection was taken to it on that account and the failure was waived.

The result is that the judgment of the criminal court must be and is affirmed.

*Burgess* and *Fox, JJ.,* concur.