# THE STATE v. LESLIE WERTZ, Appellant.

**Division Two, December 12, 1905.**

1. **RAPE: Sufficiency of Evidence.** The evidence in this case, which was a prosecution for rape, is examined, and it is held that the court, in overruling defendant's demurrer to the evidence and submitting the case to the jury, committed no error.

2. ———: **Incompetent Evidence: Conclusion of Witness.** In a prosecution for rape a witness for the State was asked, over the objection of defendant, if from what he heard the prosecutrix say and from her actions he understood she had been outraged by defendant, to which the witness answered that from prosecutrix's general appearance he would be inclined to think she had been mistreated. *Held,* that this question and answer should have been excluded, for the reason that the question sought and the answer gave the conclusion of the witness which it was the province of the jury to draw.

3. ———: **Reputation of Defendant: Prior to Charge.** Where witnesses have testified to the good reputation of defendant prior to the charge contained in the information, the State, in its examination of such witnesses, should be confined to that issue, and should not be permitted to inquire as to specific delinquencies of the defendant committed since the charge was preferred.

4. ———: **Cross-Examination of Defendant: Contradictory Statements: By Party Against Interest.** Defendant, in his examination in chief, testified that he had had no scuffle with the prosecutrix, and that he did not choke her or use any violence, nor compel her to have intercourse with him. On cross-examination he was asked if he had not stated to other parties that prosecutrix "told her story all right at the preliminary hearing, except as to the choking," and that prosecutrix had fought like everything at first. *Held,* that this cross-examination was proper, since it related to the subject of force in making the assault. *Held,* also, that defendant's statements to the other parties, being made by a party to the suit against his interest, and upon a subject material to the case, were admissible as original evidence, and there was no necessity of laying a foundation for the purpose of contradicting defendant.

5. ———: **General Instruction on Reasonable Doubt Sufficient.** The singling out of certain essential elements of the offense about which testimony is given, and instructing the jury by

State v. Wertz.

separate instructions that they must believe and find every one of such facts beyond a reasonable doubt, is not approved; a general instruction on the question of reasonable doubt is all that is necessary. And, therefore, where, in a prosecution for rape, the court had given such general instruction, it properly refused a separate instruction that the jury must believe beyond a reasonable doubt that the intercourse was had with force.

6. ————: Instruction: Defendant's Good Character. An instruction that "the previous and present good character of the defendant, if proven, alone and of itself can not justify, excuse, palliate, or mitigate the offense," is criticised as to form, but the giving of such instruction is held not to be reversible error when it is read in connection with another which told the jury "that in considering the question as to whether or not the defendant is guilty or innocent of the crime charged against him, you should take into consideration and duly weigh, along with all the other evidence in the case, the evidence offered by the defendant as to his previous character as a law-abiding citizen."

7. ————: Expert Testimony: Erroneous Instruction. The court gave the following instruction: "Whether the hypothetical case on which the opinions of the experts are based corresponds to and coincides with the facts given in the evidence, the jury alone must determine from the evidence produced in this case. And if the jury finds such hypothetical questions suppose facts not given in evidence, they, together with the opinions of the experts based thereon, should be entirely disregarded by the jury in making up their verdict." Held, that such instruction was erroneous, and the giving of it constituted reversible error, since it was for the court to determine whether there was any evidence upon which to base the hypothetical questions, and to exclude them and the answers to them if the hypothetical case did not correspond with the facts given in evidence.

8. ————: Outcry and Complaint: Instruction. The court gave the following instruction: "If the jury believe from the evidence that the defendant forcibly ravished and carnally knew the prosecutrix, against her will, they should find him guilty, even though they may further believe that after she was so ravished by defendant she rode in the buggy with him for several miles and passed by houses where strangers lived without calling out to the occupants of such houses to inform them of her trouble." Held, correct as an abstract proposition of law, though it would have been more appropriate to let the jury consider such testimony under a proper instruction by the court, advising them that the failure to make outcry or complaint

should be considered in the light of the opportunity for so doing, and the conditions surrounding the prosecutrix at the time of such failure.

9. **PRACTICE: Leading Questions: Discretion.** The examination of witnesses and the manner of eliciting testimony rests largely in the discretion of the trial court, and unless it is manifest that such discretion is abused by the court's permitting the asking of leading questions, the appellate court will not interfere.

Appeal from Putnam Circuit Court.—*Hon. Paris C. Stepp,* Judge.

REVERSED AND REMANDED.

*N. A. Franklin, B. L. Robinson* and *T. B. Davis* for appellant.

(1) The court erred in overruling defendant's demurrer to the evidence at the close of the case. Champagne v. Hamey, 189 Mo. 709; State v. Hamey, 168 Mo. 167; State v. Huff, 161 Mo. 459; State v. Patrick, 107 Mo. 147. (2) The court erred in permitting witnesses to testify that from the general appearance of prosecutrix they were inclined to think she had been mistreated. Such understandings are not allowed to pass for evidence in civil cases, and this is so *a fortiori* in criminal cases. State v. Gritzner, 134 Mo. 525; State v. Hagan, 164 Mo. 672; Roe v. Bank, 167 Mo. 422. (3) It was error for the court to permit the State to attempt to break down the character of the defendant by the cross-examination of the witnesses Jones and Holly, by stating that since the alleged rape they had heard of other specific delinquencies of the defendant, that he had, as they had heard, been guilty of other specific offenses. All of this evidence was what the witnesses had heard in regard to the defendant's conduct after he is alleged to have outraged the prosecutrix. State v. Vandiver, 149 Mo. 502; State v. Hale, 156 Mo. 109; State v. Lockett, 168 Mo. 489; State v. Prendible, 165 Mo. 359. (4) The court erred in giv-

ing instruction 4, on behalf of the State. The instruction, instead of telling the jury to weigh the evidence of defendant's good reputation, if proven, along with the other evidence, in effect tells the jury that his good reputation is not to be considered as tending to show his innocence. Fisher v. Lead Co., 154 Mo. 479; State v. Austin, 113 Mo. 538. (5) Instruction 8, given on behalf of the State, is clearly vicious and prejudicial. Hoyberg v. Henske, 153 Mo. 74; Copeland v. Railroad, 175 Mo. 662; Markey v. Railroad, 185 Mo. 364.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

(1) The asking of leading questions is always left to the sound discretion of the trial court. State v. Whalen, 148 Mo. 290; State v. Napper, 141 Mo. 401. (2) (a) In cross-examining State's witness William Smith, defendant's counsel proved by him that defendant enjoyed a good reputation prior to this trouble, the witness saying that he had never heard it questioned before this time. Having made Smith a witness for defendant on that subject, the State then had a right to cross-examine him. Nichols v. Nichols, 147 Mo. 387; State ex rel. v. Branch, 151 Mo. 641. (b) No error was committed in the cross-examination of defendant. The prosecuting attorney was permitted to ask defendant if he did not make certain statements to Albert Collins and to Sam Hollinger, which were contradictory to the evidence given by him in chief. He denied making any such statements; and the State, in rebuttal, then proved by said two witnesses, without objection from defendant, that defendant did make such statements. This was proper. State v. Avery, 113 Mo. 500; State v. Miller, 156 Mo. 85; State v. Miller, 191 Mo. 587; R. S. 1899, sec. 2637. (3) When a witness testifies that defendant's general reputation is good because he has heard nothing against him,

it is then proper for the State to ask if he has not heard of certain matters which did reflect on his character. Neither did the court commit any error in its ruling on the cross-examination of defendant's other character witness, Holly, for the same reason. 2 Wigmore on Ev., sec. 988; State v. Young, 153 Mo. 449; State v. Westlake, 159 Mo. 679. (4) As defendant procured an instruction on the subject of the failure of prosecutrix to make complaint to the people living in the one house which she saw and passed by after the commission of the alleged crime, it was certainly proper for the court, at the request of the State, to give an instruction on the same subject presenting the State's contention. In addition the complained of instruction is the law, and it has been decided to be the law many times. One of the greatest authorities on criminal law says: ''But the rule respecting the time that elapsed before the prosecutrix complains will not apply where there is good reason for the delay, as that she was under the control or influenced by her ravisher.'' Chitty on Crim. Law, 812; State v. Byrne, 47 Conn. 465; Higgins v. People, 58 N. Y. 377; Bennett v. State, 102 Ga. 656; Com. v. Cleary, 172 Mass. 177. (5) No error was committed in giving State's instruction 4 on the value of the evidence of defendant's good reputation. When this instruction is read in connection with defendant's instruction 8, on the same subject, it will be seen that the law was properly declared. State v. Darrah, 152 Mo. 541; State v. Matthews, 98 Mo. 130; State v. Smith, 164 Mo. 585; State v. Noeninger, 108 Mo. 166. (6) State's instructions 7 and 8, on the value of expert testimony, were correct. It is a fact well known to this court, and to every other court, that expert testimony is very uncertain and many times very unreliable. Hence the importance of properly advising the jury with reference to its value. Allen v. Railroad, 183 Mo. 437; State v. Dunn, 179 Mo. 111; Hoyberg v. Henske, 153 Mo. 74; State v. Dues-

trow, 137 Mo. 75; State v. Pagels, 92 Mo. 316; Rogers on Exp. Test., sec. 201; Lawson on Exp. and Col. Ev., pp. 282-284.

FOX, J.—This cause is now pending in this court upon an appeal by the defendant from a judgment of conviction in the Putnam County Circuit Court of the offense of rape. The information, charging the defendant with forcibly ravishing Lulu Barnett, was filed on August 26, 1904. The alleged offense was charged to have been committed on June 12, 1904. On August 31, 1904, defendant was put upon his trial in the Putnam County Circuit Court upon the charge contained in the information. As the sufficiency of the information is in no way challenged, it is unnecessary to reproduce it.

The testimony on the part of the State tended to show that the prosecutrix, Lulu Barnett, and the defendant had known each other for a number of years and had lived near each other during that time, except a few years while defendant was absent in Texas. Prosecutrix resided with her parents in Putnam county; they had formerly resided in Cass county. Members of the families of prosecutrix and defendant were related by marriage. On June 12, 1904, defendant, prosecutrix and a number of other young people went together to Newton and from there to Lucerne and attended a baseball game, returning to Newton about five o'clock p. m. At Newton they attended some children's exercises in the church, defendant and prosecutrix returning home together in a buggy. Prosecuting witness said that on the road about three miles from Newton, defendant attempted to take improper liberties with her in the buggy; that she resented it, and that the defendant forcibly took hold of her and choked her and a struggle ensued, and that she made all the resistance that she could until her strength gave out, and that after spending all of her

efforts defendant succeeded in ravishing her. This all occurred in the buggy, and after the struggle prosecutrix was on the left-hand side of the buggy seat and defendant on the right-hand side. She further states that they drove on for some distance but that she talked but very little; she does say, however, that she said to him something about whether or not the other young folks had gotten home, and she also made some remark about the lightning bugs. She then states that after having gone some distance the defendant made a second effort to have sexual intercourse with her and that she again resisted. At this second attempt to have sexual intercourse the prosecuting witness said to him that she would not tell on him if he would let her alone. About this time prosecutrix jumped out of the buggy and the defendant's team started to run, and defendant then left the prosecutrix and took charge of his horses. The prosecutrix then made her way to the residence of E. M. Gregory, and witness states that she complained to Mrs. Gregory, telling her what defendant had done, saying that he had nearly killed her and had treated her worse than a dog. After talking with Mrs. Gregory and getting a drink of water, she was taken up to a room occupied by Miss Bertha Wood, where she went to bed and remained the rest of the night. After the family had retired, the defendant called up from the road and asked Mr. Gregory if he had a stray girl up there, to which Mr. Gregory replied that the prosecutrix was there and had gone to bed and did not believe that she cared to see him. He gave his name and then drove away. Mr. and Mrs. Gregory testified to the complaint made by the prosecutrix upon coming to the house, and that she seemed to be in a distressed and excited condition. Mrs. Gregory testified that the prosecutrix did not tell her, upon coming to the house that night, that the defendant had forcibly ravished her, and did not complain of being bruised, but told her that Leslie Wertz had

treated her worse than a dog. On the next morning, however, the question being propounded to the prosecutrix by Mrs. Gregory, she stated that the defendant had forced her. Mrs. Gregory testified that prosecutrix seemed to be in distress and in trouble; had a troubled look, and that she saw a spot of blood on her underclothes; this, however, was accounted for by the fact that it was the time of her menstrual period. Prosecutrix further testified that she complained to her father and mother of this assault, and her father testified to bruises on her arms, and that she complained and suffered for some weeks thereafter. A necklace and locket, which were worn by the prosecutrix on that night, were found by a Mr. Wood a week later and identified by the prosecutrix. Mr. Wood found them in the mud on the left-hand side of the road, the side on which prosecutrix was riding in the buggy. The testimony tended to show that this assault occurred between the hours of ten and twelve o'clock, at a place where there was timber and underbrush on one side of the road and growing corn on the other. It also appeared in evidence that a ruffle of the skirt of the prosecutrix was torn.

Complaint was made by the father to the justice of the peace, and the defendant was arrested by the constable. After the arrest of the defendant by the constable, he requested the officer to take him by the home of the prosecutrix with a view of compromising the case. Upon seeing her, she accused the defendant of choking her; the defendant denied this and said she was telling a lie, that he did not choke her.

Defendant offered testimony tending to show that the ruffle on the skirt of the prosecutrix was torn off while she and others were walking in the afternoon before the alleged assault. Three physicians were introduced who testified that the choking of prosecutrix would leave marks on her neck which would linger from five days to a week. Numerous witnesses were

introduced showing the good reputation of defendant. Defendant testified in his own behalf and denied choking or beating or using any violence toward prosecutrix and absolutely denied forcing her to have intercourse with him.

The State in rebuttal offered two witnesses, one of whom testified that defendant, in speaking of this woman, said that she fought him some but finally gave in; the other testified that shortly after the preliminary examination defendant said that prosecutrix testified to the story just as it was except as to the choking.

Defendant denied having any such conversations with the witnesses.

This is a sufficient indication of the testimony upon which this cause was submitted to the jury to enable us to pass upon the legal propositions presented by the record. The court instructed the jury and the cause was submitted and they returned a verdict of guilty, assessing defendant's punishment at imprisonment in the penitentiary for a term of five years. The instructions complained of will be given due consideration during the course of the opinion.

Motions for new trial and in arrest of judgment being overruled, sentence and judgment in accordance with the verdict of the jury were entered of record, and the defendant in due form and time prosecuted his appeal to this court, and the record is now before us for consideration.

### OPINION.

The record in this cause discloses numerous assignments of error as a basis for the reversal of the judgment in this cause. We will give the complaints of appellant such consideration as their importance merit, and will treat of them in the order suggested by the brief of counsel.

191 Sup—37

I.   It is insisted that the court erred in overruling the defendant's demurrer to the evidence at the close of the case.  We have carefully read in detail the evidence disclosed by the record in this cause, and it will suffice to say that upon the testimony introduced the case was one for the jury, and the court, in overruling the demurrer to the evidence and submitting the case to the jury, committed no error.

II.   Complaint is made that the court erroneously admitted incompetent evidence offered by the State. Our attention is specially directed to the testimony of Mrs. E. M. Gregory and Miss Bertha Wood, the witnesses by whom the State sought to show that prosecutrix, shortly after the assault, made complaint of the outrage.  This question was propounded and answered by the witnesses, to which objections and exceptions were duly preserved: "Q.  I will ask you if, from what you heard her say there, if you understood from what she said and her actions there she had been outraged by this man Wertz?  A.  Well, from her general appearance I would be inclined to think she had been mistreated."  This question and answer should have been excluded.  It simply sought the understanding and conclusion of the witnesses from what was said by the prosecutrix, which was clearly inadmissible.  Witnesses should state the facts, and it is the province of the jury to draw conclusions from such facts.  The State had the right to inquire of these witnesses, to whom complaint was made, as to what the prosecutrix said.  If the witnesses were unable to remember precisely what was said, then under the rules of evidence they would be permitted to give their impression as to what was said, but we know of no rule of evidence which permits a witness to give his understanding or conclusion as to what was meant by certain statements made.  It has been ruled by this court that suppositions, understandings and conclusions of witnesses are not allowed to pass for

evidence, even in civil cases, and the rule is equally applicable to evidence in criminal cases. [State v. Gritzner, 134 Mo. 512; State v. Hagan, 164 Mo. l. c. 672; Roe v. Bank, 167 Mo. l. c. 422.]

III.   It is insisted that the court improperly permitted the State to attempt to break down the character of the defendant, by admitting testimony of specific delinquencies of the defendant, by permitting testimony which the witnesses had heard of since the charge upon which the defendant was on trial.  This objection is directed to the examination by the State of witness Smith, as well as the cross-examination of witnesses Jones and Holly.  These witnesses had testified to the good reputation of the defendant prior to the charge contained in the information.  The issue presented by the defendant upon this subject was his good reputation prior to being charged with the offense for which he was being tried, and the examination of these witnesses should be confined to that issue, and while the State, upon cross-examination of a witness who had testified as to the general reputation of the defendant, may inquire of the witness of specific instances in which the character of the defendant was reflected upon, yet this inquiry should not extend to discussions reflecting upon the defendant's reputation which had occurred since the charge in the information had been preferred.  Of course it is not meant by this to say that the State, after the defendant testifies in his own behalf, for the purpose of affecting his credibility, would not be permitted to introduce testimony as to his general reputation for morality up to the time of the trial.

IV.   The appellant complains of the action of the trial court in permitting the State to cross-examine the defendant as to conversations had with witnesses Collins, Hollinger and Howard.  The defendant in his examination in chief stated that he had had no scuffle

with the prosecutrix on the night upon which the assault is charged to have been made, and that he did not choke her or use any force or violence, nor did he compel her to have intercourse with him. The conversations with the witnesses above designated, to which the objection is urged and to which the attention of the defendant was directed, consisted of inquiries of the defendant whether or not he had said to Albert Collins that "Lulu Barnett told her story all right at the preliminary hearing, except as to the choking," and that he had said to witness Sam Hollinger that prosecutrix had fought like everything at first, and to the witness Howard the same statement as made to Collins. We are of the opinion that this cross-examination was proper; it related to the subject of force in making the assault upon prosecutrix, about which the defendant had testified in his examination in chief; aside from this, the testimony of Collins, Howard and Hollinger was admissible as original evidence, and there was no necessity of even calling the defendant's attention to the conversations. It was a statement by a party to the suit against his interest and upon a subject material to the case, and therefore there was no necessity of laying a foundation for the purpose of contradicting him. The cross-examination of the defendant in the case of State v. Avery, 113 Mo. 475, involved this same question, and it was expressly ruled that there was no error in such cross-examination. BURGESS, J., speaking for the court in that case, said: "In the case of the State v. West, 95 Mo. 140, the defendant on cross-examination was asked if he did not state to Si Finley that day, the day of the homicide, that he had the same right to kill a man who was trying to steal his land, as he would if he was trying to steal his horse? And, although the defendant had not testified to any conversation with or statements made to Finley in his examination in chief, this court ruled that the question was a proper one, and that the court did

not commit error in permitting it to be answered."
The Avery case has been cited approvingly in a num-
ber of well-considered cases.

V.   Appellant insists that the court erred in its
refusal of instruction "B," requested by the defend-
ant at the close of the case.   This instruction was as
follows:  "B.   The court instructs the jury that if
you have a reasonable doubt from the evidence that
the intercourse defendant had with the prosecuting
witness, Lula Barnett, if you believe he did have in-
tercourse with her, was with force and against her
will, you will solve that doubt in favor of the defend-
ant and find him not guilty, although you may believe
from the evidence that the defendant did actually
have intercourse with said prosecuting witness."
There was no error in the refusal of this instruction.
It was fully covered by instruction No. 1 given at the
request of the defendant.   The singling out of certain
essential elements of the offense about which testi-
mony was given and then instructing the jury by
separate instruction that they must believe and find
every one of such facts beyond a reasonable doubt,
has not met with the approval of this court.   [State
v. Garth, 164 Mo. 565; State v. Wells, 111 Mo. 536.]
The court by instruction No. 1, as before stated, had
expressly directed the jury "that the information in
this case is a mere formal charge for the purpose of
putting the defendant on trial, and constitutes no evi-
dence of his guilt, and no juror should permit himself
to weigh it as any evidence against the defendant in
making up your verdict, for the law presumes the de-
fendant not guilty, and this presumption of innocence
goes with him throughout the whole case, and at the
end of the trial entitles him to an acquittal unless
overcome by a proof of guilt so strong, credible and
conclusive as to convince your minds beyond a reason-
able doubt that he is guilty as charged."   This was
certainly presenting to the jury the subject of reason-

able doubt in about as strong and emphatic terms and as extremely favorable to the defendant as would reasonably meet the approval of this court.

VI.  Appellant challenges the correctness of instruction No. 4 given by the court to the jury. The instruction was as follows: ''If the jury believe from the evidence and beyond a reasonable doubt that the defendant did ravish and carnally know the prosecutrix, Lula Barnett, as charged in the information, then the previous and present good character of the defendant, if proven, alone and of itself cannot justify, excuse, palliate, or mitigate the offense.'' This instruction should be read in connection with instruction No. 8, given on the part of the defendant, embracing the same subject, which told the jury, ''that in considering the question as to whether or not the defendant is guilty or innocent of the crime charged against him in this information, you should take into consideration and duly weigh, along with all the other evidence in the case, the evidence offered by the defendant as to his previous character as a law-abiding citizen.'' While we do not wish to be understood as approving the form of instruction No. 4, yet, when the two instructions are read together, we are unwilling to say that the giving of instruction No. 4 would constitute reversible error. We are unable to understand why there should be a wandering away upon this subject from approved precedents. This court, in numerous cases, has repeatedly approved the plain and unambiguous declarations of law given by the courts of this State, which simply tells the jury that if they believe and find from the evidence in the cause that defendant, in the neighborhood in which he resides, bore a good reputation, in determining his guilt or innocence the jury will take into consideration such good character, but if after a full and careful consideration of all the testimony in the cause, including such good character, they believe beyond a reasonable doubt that the de-

fendant is guilty of the offense charged, then they should not acquit him on the ground of such good character. We indulge the hope that, upon a retrial of this cause, if there is testimony introduced upon the subject of good reputation of the defendant, the trial court will have the instructions conform to some of the approved precedents.

VII. The trial court, upon the subject of expert testimony, by instructions Nos. 7 and 8, declared the law as follows:

"7. That the testimony of the physicians and surgeons in this case is what is known in law as expert testimony, and such testimony is to be considered by the jury, subject to the same rules of credit and discredit as the testimony of other witnesses in the case. And the expert opinions given as to whether or not the choking of the witness, Lula Barnett, would have left black marks on her throat are not conclusive on the jury, but may be disregarded entirely if the jury believe such opinions unreasonable."

"8. You are further instructed that such expert opinions neither establish nor tend to establish the truth of the facts upon which they are based; whether the facts testified to by the other witnesses are true or false is to be determined by the jury alone. And you must also determine whether the facts and matters stated and submitted to the experts in the hypothetical questions are true in fact and have been proven in the case; whether the hypothetical case on which the opinions of the experts are based corresponds to and coincides with the facts given in the evidence, the jury alone must determine from the evidence produced in this case. And if the jury finds such hypothetical questions suppose facts not given in evidence, they, together with the opinions of the experts based thereon, should be entirely disregarded by the jury in making up their verdict."

The correctness of the direction to the jury upon this question is seriously challenged by learned counsel for appellant. We are unwilling to sanction and approve that part of the declaration upon the subject of expert testimony embraced in instruction No. 8, and a careful analysis of the instruction makes it manifest that the court undertakes to submit matters to the jury which were exclusively within the province of the court. The most objectionable feature of this instruction is embraced in that part of the instruction where the court says: ''Whether the hypothetical case on which the opinions of the experts are based corresponds to and coincides with the facts given in the evidence, the jury alone must determine from the evidence produced in this case. And if the jury finds such hypothetical questions suppose facts not given in evidence, they, together with the opinions of the experts based thereon, should be entirely disregarded by the jury in making up their verdict.'' It is clear that, if the hypothetical case on which the opinions of the experts were based did not correspond to and coincide with the facts given in evidence, the court should have excluded the questions and answers to such hypothetical questions, and this error is emphasized by the additional direction to the jury that they must determine whether there was any evidence upon which to base such hypothetical question. This direction to the jury was manifestly erroneous and constitutes reversible error.

Again we feel constrained to suggest to the trial court the propriety of following the old land-marks. The law upon the subject of expert testimony has been repeatedly and correctly declared by the courts of this State, and such declarations have uniformly met the approval of this court, and should be regarded as well-established precedents. Where medical experts testify in a case it is usual and common for the court, in directing the jury as to the credit and weight to

be given to such testimony, to simply say to the jury, by its instructions, that the opinions given by the medical experts in this cause are testimony before you and subject to the same rules of credit or discredit as the testimony of other witnesses. The opinions neither establish nor tend to establish the truth of the facts upon which they are based. Whether the matters testified to by the witnesses in the cause, as facts, are true or false, is to be determined by the jury alone. Neither are the hypothetical questions put to the medical experts by the counsel in the cause evidence of the truth of the matters stated in these questions. An instruction substantially in this form would have covered the entire subject of the expert testimony given in this cause.

VIII. It is next insisted that the court improperly declared the law by instruction No. 2 given to the jury; it was as follows:

"If the jury believe from the evidence that the defendant forcibly ravished and carnally knew the prosecutrix, Lula Barnett, against her will, they should find him guilty, even though they may further believe that after she was so ravished by defendant she rode in the buggy with him for several miles and passed by houses where strangers lived without calling out to the occupants of such houses to inform them of her trouble."

The Attorney-General, with commendable frankness, concedes that the wording of this instruction is at least subject to criticism, but insists that it is similar to instruction No. 4 given by the court in the case of State v. Boyd, 178 Mo. 2. As an abstract proposition of law, this instruction is correct. The courts, upon the subject of the necessity of making outcry or complaint by the female charged to have been outraged, have gone to the very extreme limits of the application of that doctrine, and we are unwilling to extend it further. Recurring to the instruction com-

plained of, we think it clear that the mere fact of prosecutrix, under the circumstances surrounding this case, as shown by the evidence, riding in the buggy with the defendant for some distance, at a late hour in the night, passing the houses of strangers and failing to call out to the occupants of the houses or complain to them of the assault made upon her, was of little weight and force, as a circumstance in this case; however, it was before the jury and the form of the instruction is objectionable. It would be more appropriate to let the jury consider such testimony under a proper instruction by the court, advising them that the failure to make outcry or complaint must be considered in the light of the opportunity for so doing, and the conditions surrounding the prosecutrix at the time of such failure. Instruction No. 4 in the Boyd case, to which we are cited, materially differs in form to the instruction now being discussed. There the jury was told: "It was the duty of the prosecuting witness, the said Ida Andrews, at the time of the alleged assault, to make an outcry, and as soon as an opportunity offered, to complain of the alleged offense to others; and unless you believe from the evidence that she did make such outcry at the time, and did make such complaint as soon as the opportunity offered, then you should take such circumstances of omission to make an outcry or complaint, or both, into consideration, with all the other evidence, in determining whether or not, in fact, a rape was committed. But such complaints, if any were made, are not to be considered as evidence of the matters complained of, but only as tending to corroborate or not to corroborate her testimony, so far as you may believe they do tend to corroborate or fail to corroborate the same." This instruction was proper as applicable to the facts of that case, and met the approval of this court.

IX. Finally, appellant earnestly complains at the action of the court in permitting counsel for the State

to propound numerous leading questions to the witnesses on the part of the prosecution. It is sufficient to say upon this contention that the examination of witnesses and the manner and method of eliciting testimony in the trial of a case is largely in the discretion of the trial court, and unless it is manifest that this discretion is abused, the judgment in the cause will not be disturbed upon that ground. [State v. Whalen, 148 Mo. l. c. 290; State v. Napper, 141 Mo. 401.]

We have thus given expression to our views upon the legal propositions disclosed by the record, which results in the conclusion that, for the errors as herein indicated, the judgment should be reversed and this cause remanded, which is so ordered.

All concur.