239 S.W.2d 532 (1951)
STATE
v.
CARSON.
No. 28062.
St. Louis Court of Appeals, Missouri.
May 15, 1951.
Rehearing Denied June 13, 1951.
*533 Morris A. Shenker, St. Louis, for appellant.
Stanley Wallach, Pros. Atty., St. Louis County, Clayton, for respondent.
BENNICK, Judge.
This is a prosecution for an alleged open and notorious act of public indecency, grossly scandalous, which is made a misdemeanor by Section 563.150, R.S.Mo. 1949. In common parlance the offense charged is that of indecent exposure.
Upon a trial in the Circuit Court of St. Louis County the defendant, Harold Carson, was found guilty as charged and his punishment fixed at imprisonment in the county jail for a term of one year. Following the overruling of the motion for a new trial, judgment was pronounced upon the verdict, whereupon defendant *534 made application for and was duly allowed an appeal to this court.
Defendant was charged with having committed the offense on May 3, 1949, in the view and presence of two young women, Theresa Rosner and Marcella Richter, both of whom were eighteen years of age.
According to the state's case, the scene of the offense was on Easton Avenue near its intersection with Ogden Avenue, in Wellston. The time was about nine o'clock at night.
As the two prosecuting witnesses were walking along together on Easton Avenue, they came up to an automobile parked at the curb and observed a man standing at the rear of the car as though he were removing something from the trunk. As they passed the car the man exposed himself and addressed certain vulgar remarks to them. A half block farther on he pulled up alongside of them and repeated the offense from inside the car.
One of the young women took down the license number of the automobile, and the incident was then reported to the sheriff's office. On May 18th defendant was taken into custody on the ruse that he was suspected of a criminal offense in connection with an automobile accident which had purportedly occurred on the night of May 3rd, the night of the offense in question. While defendant was in custody both prosecuting witnesses not only identified him as the perpetrator of the offense upon them, but also identified his automobile as the one in which he had been riding on that occasion. A deputy sheriff, Phil Moeller, gave testimony that on the afternoon following his arrest defendant voluntarily made an oral confession of guilt.
Defendant was twenty-two years of age at the time of the trial, and resided with his sister, Mrs. John L. Randolph, at 9412 Kathlyn Drive in Woodson Terrace, St. Louis County. He had lived in his sister's home for a period of two years since his discharge from the army, and was known to the neighbors residing in the same block.
The defense was an alibi supported by the testimony of defendant himself along with that of his sister and several of the neighbors.
Briefly stated, the defense was that after dinner was over on the evening in question, defendant had played ball in the street with a number of the children in the neighborhood until seven o'clock or shortly after when it became too dark to continue the game. He then went inside the house and joined a party composed of his sister and Mr. and Mrs. Earl Shucart, who lived next door at 9408 Kathlyn Drive. The four of them had a few drinks of one thing or another, and sat listening to the radio until eleven o'clock, two hours after the time of the commission of the offense in question, when the gathering broke up and the Shucarts returned to their own home. The witnesses explained their ability to recall what had transpired on the particular night because of the fact that they had had their attention specifically called to it by the officers who came around only a few nights later and made inquiry as to defendant's whereabouts on the night of May 3rd.
The chief complaint on this appeal has to do with the injection into the case of the question of defendant's alleged commission of other offenses of the same character as that for which he was on trial. The challenge goes to the action of the court in allowing the state to cross-examine defendant's character witnesses concerning rumors of such other offenses; in allowing the state to cross-examine defendant himself in regard to the same; and in permitting certain witnesses for the state to testify that defendant had committed the particular offenses in their presence.
There is no doubt of the general rule that on a prosecution for a specific offense, evidence that the accused has committed other independent offenses is inadmissible in proof of his guilt of the offense for which he is being tried. There is, however, the recognized exceptionthat evidence of other crimes is none the less *535 competent to prove the specific crime in issue when such evidence tends to establish motive; intent; the absence of mistake or accident; a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; or the identity of the person charged with the commission of the crime on trial. State v. Spinks, 344 Mo. 105, 125 S.W.2d 60; State v. Garrison, 342 Mo. 453, 116 S.W.2d 23.
Of course in this case there is no pretense that the evidence of other offenses was admissible under any one of the exceptions to the general rule of exclusion; nor, in fact, was it elicited in support of the state's case in chief. On the contrary, the whole question here, as defendant's complaint indicates, is whether the state was within its rights in bringing out such evidence on cross-examination of defendant's character witnesses, and in attempting to impeach defendant himself by such character of evidence after he had taken the stand in his own behalf.
Defendant put on five witnesses, all residents of the neighborhood in which he lived, who testified on their direct examination as to his good reputation. All of them were asked as to his reputation for honesty, truthfulness, and veracity. With three of them the inquiry was extended to the question of his reputation for morality. The first of them, Frances Shucart, was also asked on direct examination whether there had been any reason to suspect defendant of any unbecoming conduct with the children in the neighborhood, to which she answered in the negative.
Having testified on direct examination to defendant's good reputation, the witnesses were then asked on cross-examination if they had heard rumors that defendant had been guilty of similar acts of indecent exposure in the presence of persons identified as Audrey Haverkost, Pauline Steinbeck, Sandra Gamache, Angelina Licavoli, Mary Emerson, and Bertha Messner. Apparently such rumors were of acts involving four separate and distinct offenses, all independent of the offense for which defendant was on trial.
It was brought out that the offense in the presence of Mary Emerson had been committed on April 10, 1949, which of course had preceded the offense on trial. It was also brought out that Mary Emerson was a child ten years of age. The offense in the presence of Audrey Haverkost, Pauline Steinbeck, and Sandra Gamache had been committed on April 21, 1949, which had also preceded the offense on trial. All of these girls were fourteen years of age. The offense in the presence of Bertha Messner had been committed on May 17, 1949, which was after the time of the offense on trial. The same was true with the offense committed against Angelina Licavoli, which was on May 18, 1949. It was brought out that Bertha Messner was eight and Angelina Licavoli fifteen years of age.
It was shown by the responses of the witnesses that rumors had indeed been afloat in the neighborhood, although not all of the witnesses had heard rumors of all of the alleged offenses. A part of their information had been gained from articles appearing in the newspapers after defendant had been taken into custody. Seemingly the rumors had had no particular adverse effect upon defendant's reputation in the neighborhood so far as the witnesses had been able to discern.
The principal objection to such cross-examination is that it descended into the particulars of the other offenses concerning which rumors were afloat, and involved the question of defendant's reputation subsequent to the offense for which he was being tried. It is also claimed that the cross-examination was error in the case of those witnesses who had not been asked on direct examination in regard to defendant's reputation for morality; and that it was in any event improper, in the conduct of the cross-examination, to mention the ages of the girls in whose presence the other exposures had allegedly occurred.
When defendant elected to put his character in issue, he thereby subjected *536 his witnesses to legitimate cross-examination upon the subject of inquiry, and himself to such disaster as might result therefrom. Fundamentally it is true that character, whether good or bad, is to be established by proof of general reputation, and not by evidence of particular and specific acts of either good or bad conduct as the case may be. However it is to be kept in mind that there is a clear distinction to be drawn between offering evidence of specific acts of misconduct on the part of the defendant, and inquiring of his character witnesses on cross-examination whether they have heard rumors of specific acts of misconduct which would reflect upon his character. It is the rule in our decisions that such an inquiry is permissible for the purpose of testing the knowledge of the witnesses, the trustworthiness and accuracy of their information, the basis for their judgment, their candor, and of course their credibility. If the witnesses admit that such rumors were known to them, such knowledge may well be inconsistent with their previous assertions that the defendant's reputation was good. With this the purpose of the inquiry, there is no violation of the rule forbidding proof of particular acts of misconduct; and error is therefore not to be predicated in this case upon the mere fact that the state was permitted to ask the witnesses on cross-examination if they had heard reports of other specific offenses allegedly committed by defendant. State v. Crow, 107 Mo. 341, 17 S.W. 745; State v. Carroll, Mo.Sup., 188 S.W.2d 22, 23; State v. Havens, Mo.Sup., 177 S.W.2d 625; State v. Cooper, Mo.Sup., 271 S.W. 471; State v. Glazebrook, Mo.Sup., 242 S.W. 928.
Nor in view of the circumstances of the case was the inquiry rendered improper because of the fact that it was not limited to the question of defendant's reputation at and prior to the time of the offense for which he was being tried. On the contrary, it will be recalled that two of the offenses to which the state referred had not been committed until after the offense with which defendant stood charged, so that rumors and discussions in regard to those offenses at least would necessarily have been subsequent in point of time.
Generally speaking it is true that inasmuch as character evidence is offered as substantive proof with respect to the defendant's connection with some particular act, the time of the commission of the act fixes the time to which the evidence of character should be confined. State v. Bugg, 316 Mo. 581, 292 S.W. 49. It is the defendant's character at that particular time which is material in the case, and not his reputation after the occurrence of the event when people might have been disposed to judge his reputation in the light of their own personal opinions upon the question of his guilt or innocence.
Consequently if defendant in this case had limited his evidence of good reputation to the time of the offense out of which the prosecution had arisen, it would have been error for the state to extend the inquiry so as to embrace the issue of his character at a subsequent occasion. State v. Wertz, 191 Mo. 569, 90 S.W. 838. However defendant's own evidence was not confined to the time of the commission of the particular offense but purported to cover the whole period of the witnesses' acquaintance with defendant up to the very time of trial, and the state was therefore not required to impose what would otherwise have been the necessary restriction upon the scope of its cross-examination.
There is much the same to be said in answer to the contention that inasmuch as the rumors of other offenses related to the question of defendant's morality, it was error to include such matters in the cross-examination of those of his witnesses who had not been asked to testify on direct examination in respect to his reputation for morality, but only in respect to his reputation for honesty, truthfulness, and veracity. In the first place morality is a trait of character inherently involved in a sex offense such as that for which defendant stood charged, and was therefore a proper subject for cross-examination after defendant had voluntarily *537 put his character in issue. Indeed defendant recognized that his reputation for morality was properly in issue by making specific inquiry in that regard of certain of his character witnesses. The state would therefore have been in any event entitled to accept the challenge; and it was of no consequence that the cross-examination upon this matter was not strictly confined to those of defendant's witnesses who had been asked to state his reputation for morality.
Since it was proper for the state, when confronted with evidence of defendant's good character, to meet the issue by cross-examining his character witnesses concerning rumors in circulation imputing other similar offenses to defendant, it was not objectionable to mention the ages of the girls in whose presence the other offenses had allegedly been committed. The inquiry on cross-examination regarding rumors of other particular offenses was only permissible for the purpose of overcoming the effect of the testimony of defendant's good character as adduced on the witnesses' direct examination, and it is obvious that the ages of the girls purportedly subjected to humiliation was a matter which would directly affect the reputation of a person charged with the offenses. While degrading under any circumstances, sex offenses are all the more revolting in the eyes of the public generally when they involve helpless children of tender years.
This brings us to the question of the propriety of permitting the state to cross-examine defendant himself concerning the other alleged offenses about which his witnesses had been interrogated, as well as of permitting certain of the girls mentioned to testify for the state in rebuttal that defendant had committed the offenses in their presence.
So far as the factual background is concerned, it appears that defendant took the stand in his own behalf and gave testimony to support his alibi. At the very close of his direct examination he was then asked by his counsel, "Did you at any time expose yourself to anybody on the streets of St. Louis, St. Louis County, or anywhere else?" He replied to such question in the negative.
On cross-examination he was asked if he was acquainted with Audrey Haverkost, and if he knew of any reason why she should have identified him as the person who had exposed himself in her presence. In the lengthy colloquy which followed between court and counsel, the question was lost sight of and no direct answer given. Defendant was then specifically asked if he had ever exposed himself to Sandra Gamache, Bertha Messner, Angelina Licavoli, or Mary Emerson. In each of such instances he denied the offense.
Thereupon the state called Audrey Haverkost, Sandra Gamache, Angelina Licavoli, and Mary Emerson as rebuttal witnesses, and each of them not only testified to an offense committed in her presence, but also identified defendant as the guilty party.
Defendant contends that there was no proper basis for an inquiry into his commission of offenses other than that with which he was charged; that the testimony of the four rebuttal witnesses was not admissible to rebut his own testimony on direct examination; that if he was to be impeached, the state's impeaching evidence should have been limited to proof of the admission of guilt that he had allegedly made to Phil Moeller, the deputy sheriff; that because of its highly prejudicial nature the rebuttal evidence should in any event have been limited to the testimony of only one girl; that there had been no proper foundation laid for the testimony of Audrey Haverkost; and that Angelina Licavoli's testimony was incompetent since it related to an offense committed subsequent to the time of the offense on trial.
With defendant taking the stand in his own behalf, he was subject to impeachment the same as any other witness. State v. Bugg, supra.
It was of his own volition that on his direct examination he denied having ever exposed himself to anybody on the streets of St. Louis, St. Louis County, or anywhere else. He did not in anywise *538 limit his testimony in such respect as to person, place, or time. Since he himself had tendered the issue, the state was not bound by his answer, but was entitled to meet it by evidence to the contrary. It was therefore proper for the state, not only to cross-examine defendant himself in regard to his commission of other offenses, but also to put on rebuttal witnesses to testify that he had committed offenses in their presence. Having raised the issue and gained whatever benefit was to be derived from his profession of innocence of any and all offenses against any person at any time or place, he may not now be permitted to contend that there was no basis for the state's inquiry into his other offenses, or that all such evidence was immaterial. State v. King, 342 Mo. 975, 119 S.W.2d 277.
As for the contention that the impeaching evidence should have been confined to the testimony of Phil Moeller, the deputy sheriff, or in any event to the testimony of only one girl, it is enough to say that there was no such objection in the lower court, so that it comes too late on this appeal.
The final point is that it was error to overrule the motion to strike and to declare a mistrial after inquiry had been made of defendant's witness, Earl Shucart, relative to his having told his wife that he would "fix that up" in the course of his testimony.
Mrs. Shucart had preceded her husband on the stand, and had been asked on cross-examination as to why she and her husband had gone a considerable distance to purchase soda on the evening of the offense in question when there was a liquor store located at the end of their own block. Such inquiry was of course designed to break down the alibi based upon the testimony that defendant and the Shucarts had spent the entire evening together having a few drinks and listening to the radio until long after the time when the offense had been committed. Shucart was asked whether, in discussing his wife's testimony outside the court room with particular reference to why he had bought the soda so far from home, he had assured her that he would "fix that up" in his own testimony. His explanation for having gone so far was that the proprietor of the store to which he went was a customer of his; and he admitted the discussion with his wife, but denied the use of the particular language. Conceding the implication which the state's attorney sought to draw, there was nevertheless nothing improper in the inquiry, and it was incumbent on the witness to make such denial or explanation as he could and as he did. The court acted properly in overruling the motion to strike and for a mistrial.
The judgment rendered by the circuit court should be affirmed, and it is so ordered.
ANDERSON, P. J., and McCULLEN, J., concur.