**STATE of Missouri, Respondent,**

v.

**Lovie LINZIA, Jr., Appellant.**

**No. 52197.**

Supreme Court of Missouri, Division No. 2.

March 13, 1967.

Robert G. Duncan, Pierce, Duncan, Beitling & Shute, Kansas City, for appellant.

Norman H. Anderson, Atty. Gen., Jefferson City, Selden M. Jones, Special Asst. Atty. Gen., Kansas City, for respondent.

DONNELLY, Judge.

Appellant, Lovie Linzia, Jr., was convicted of first degree robbery by means of a dangerous and deadly weapon under § 560.-120 RSMo 1959, V.A.M.S., by a jury in the Circuit Court of Jackson County, Missouri, and his punishment was assessed at imprisonment in the State Department of Corrections for a term of eighteen years. Following rendition of judgment and imposition of sentence an appeal was perfected to this Court.

Appellant does not question the sufficiency of the evidence. The record justifies the following brief recitation of facts: In November, 1965, John Mondaine was employed as a porter by Goldman's Jewelry Store, 11th and Walnut Streets, Kansas City, Jackson County, Missouri. In late October, 1965, Mondaine discussed with appellant, and others, whether there was a way Mondaine "could sneak them in" the jewelry store "so they could open the safe." On Friday evening, November 5, 1965, Mondaine let appellant and two companions into the store. They remained all night and he let them out Saturday morning. On the morning of November 10, 1965, about 8:30 a. m., Mondaine again admitted appellant and two companions through the back door of the store. Max Roth, Joe Flapan and Ronald Weinsaft, employees of the store, had entered by way of the front door. Flapan worked the combination on the vault, called to Weinsaft, and Weinsaft opened the door of the vault. When Weinsaft turned from opening the door of the vault, he observed appellant, with a gun in his hand, and two other men standing behind Flapan and Roth. Appellant hit Weinsaft "in the back of the head" and Weinsaft, Flapan and Roth were taken downstairs to the basement where their wrists and ankles were bound. Appellant, not knowing the vault had been opened, asked for a key to the vault, went upstairs, and a few minutes later left the store with his two companions. The employees untied their wrists and ankles, went back upstairs and found that two boxes of jewelry were missing from the vault. Appellant and two other men drove to Texas that afternoon and took the jewelry with them. They were apprehended in Dallas, Texas.

Appellant first asserts error in the admission of certain testimony elicited from John Mondaine. It is as follows:

"Q. Now, had they been inside the store, had you let those same three men in the store prior to or before November 10, 1965?

"MR. DUNCAN: I object to that, Your Honor, not being charged in the indictment. This man is charged with a robbery on November the 10th. Anything else would be irrelevant and immaterial and prejudicial.

"THE COURT: Overruled.

"Q. (By Mr. Stephenson) You may answer the question.

"A. Will you ask the question again?

"Q. When had you let them in the store prior to or before November 10th? A. Let's see, I think Friday, that Friday before —it was that Friday before—it happened on Friday and it was the Friday, that following Friday.

"Q. The same three men? A. Yes, sir.

"Q. And for what purpose did you let them in on that occasion?

"A. So the robbery could take place.

"Q. For the robbery to take place, you say? A. Yes.

"Q. Did it take place that day? A. No.

"Q. Did a robbery then occur on November the 10th?

"A. Yes.

On cross-examination, Mondaine testified as follows:

"Q. Now, you say that on the Friday before this that you had let these men in to the store, is that correct? A. Yes.

"Q. When did you let them in that time?

"A. I was supposed to get off work at 3:30 but I worked until 4:30 so they wouldn't be in the store too long after they closed, Friday evening around 4:25.

"Q. 4:25 you let them in? A. Yes.

"Q. That was in the evening? A. Yes.

"Q. Is Goldman's open on Saturday? A. Yes.

"Q. Did you work that Saturday? A. Yes.

"Q. Did you let them out Saturday? A. Yes.

"Q. All right. Now, it is your testimony that Mr. Linzia was one of those men that was in there all night Friday night and Saturday morning? A. Yes.

"Q. All right. And it is your testimony also that there was some discussion about Mr. Linzia being able to open the safe, is that correct? A. No, it was before then.

"Q. Well, hadn't you had a conversation in which Mr. Linzia had said, or someone had told you that Mr. Linzia could open the safe? A. Yes.

"Q. And they were in there all night Friday night and Saturday morning? A. Yes.

"Q. Is that your sworn testimony? A. Yes.

"Q. But there was no robbery that night?

"A. No robbery."

 Appellant contends that the evidence adduced in behalf of the State was inadmissible because it constituted proof of another offense. We are of the opinion that the general rule forbidding evidence of a crime other than the crime for which the defendant is on trial is not applicable here. Generally, of course, evidence of a different crime is inadmissible. State v. Reese, 364 Mo. 1221, 274 S.W.2d 304. But there are exceptions to the general rule. One is that where "the proof of other offenses may tend to establish * * * a common scheme or plan embracing the commission of separate similar offenses so interrelated to each other that proof of one tends to establish the other, such other offenses are widely held under these cir-

cumstances to be admissible in proof." State v. Kornegger, 363 Mo. 968, 975, 255 S.W.2d 765, 768; 20 Am.Jur., Evidence, § 314; 22A C.J.S. Criminal Law § 688.

The evidence is inconclusive as to what happened in the jewelry store Friday night, November 5, 1965. If appellant at that time attempted to "open the safe," the attempt was apparently unsuccessful. Perhaps this illegal entry was only preparation for the crime committed November 10, 1965. In any event, the ultimate purpose, an unlawful taking of property, was successfully consummated by robbery November 10, 1965. This Court said in State v. Harrison, Mo.Sup., 285 S.W. 83, 86: "There was a plan or scheme amounting to conspiracy, * * * which they entered into for the purpose of robbing that store, and everything they did in pursuance of that plan could be shown in the evidence. Therefore the evidence was admissible." See also State v. Greenwade, 72 Mo. 298; State v. Garton, Mo.Sup., 371 S.W.2d 283, 287, 288; and State v. Evans, Mo.Sup., 237 S.W.2d 149, 151. The evidence of the entry on Friday, November 5, 1965, was admissible.

Appellant next asserts that the trial court erred in giving Instruction No. 2 because it required "that in order to convict, the jury find that Max Roth was assaulted and that 'any property or money' was taken from his person or in his presence, with the intent to deprive Max Roth of his ownership." The indictment charged the robbery of Max Roth. The essence of appellant's contention is that Goldman's Jewelry Store, not Roth, owned the merchandise taken, and that there was no evidence to the effect that Roth was responsible for and had custody of the property.

 Roth testified that he was sales manager of the store, that Joe Flapan was manager of the store, that Flapan and Roth were equal in responsibility, and that Roth was in charge of the sale of everything that came into the store. Flapan tes-

tified that he was manager of the store along with Roth and that Roth took care of the stock. The evidence shows that Roth was lawfully in possession of the jewelry by virtue of his employment. He had sufficient ownership, as against appellant, for the purposes of this prosecution. State v. Montgomery, 181 Mo. 19, 29, 79 S.W. 693, 696, 67 L.R.A. 343.

Appellant finally asserts that the trial court erred in admitting in evidence certain testimony elicited from Ronald Weinsaft. Appellant contends such testimony constituted "an opinion that invaded the province of the jury on the ultimate issue of the trial." The record in this regard reads as follows: "Q. Now, did you later identify this defendant Lovie Linzia as being the man that struck you on the head? A. Yes. A. Are you sure today — MR. DUNCAN: I object to that, Your Honor, as being repetitious, also invading the province of the jury. THE COURT: Finish your question. I do not know what it is. Q. (By Mr. Stephenson) Are you sure today beyond any reasonable doubt that this is the man who struck you on November 10, 1965? MR. DUNCAN: Your Honor, I am going to object to that. That is certainly invading the province of the jury, it is repetition, also unbelievable on the basis of what he says his identification is based on. THE COURT: Overruled. Q. (By Mr. Stephenson) You may answer the question. A. I believe he is."

 It is not proper for a witness to testify to a conclusion when it has the effect of answering the ultimate issue the jury is to determine. In State v. Wertz, 191 Mo. 569, 578, 90 S.W. 838, 841, a rape case, the following question was asked and answer given: "Q. I will ask you if from what you heard her say there, if you understood from what she said and her actions there, she had been outraged by this man Wertz? A. Well, from her general appearance I would be inclined to

think she had been mistreated." That testimony was held inadmissible.

 However, an opinion as to *identity* may be admissible if based on the personal knowledge or observation of the witness. Weinsaft based his testimony on his own observations of appellant's "build and by his voice." His answer to the question was properly admitted. State v. Blackmore et al., 327 Mo. 708, 38 S.W.2d 32; State v. Franke, 159 Mo. 535, 543, 60 S.W. 1053, 1054; State v. Riddle, 324 Mo. 96, 23 S.W.2d 179; 23 C.J.S. Criminal Law § 864, pp. 405–407; 77 C.J.S. Robbery § 47, p. 507.

The use of the question, in the form asked, should not be encouraged. However, the witness responded with an ordinary opinion not in any way invading the province of the jury, and, under these circumstances, we find no prejudicial error.

An examination of the record as required by Rule 28.02, V.A.M.R., discloses no error. The judgment is affirmed.

All of the Judges concur.