STATE of Missouri, Respondent,

v.

Timothy Paul CASON, Appellant.

No. 61547.

Supreme Court of Missouri, Division No. 2.

April 8, 1980.

Jeff S. Elson, Brookfield, for appellant.

John Ashcroft, Atty. Gen., Kathryn Marie Krause, Asst. Atty. Gen., Jefferson City, for respondent.

STOCKARD, Commissioner.

Timothy Paul Cason, age 16, was found guilty of capital murder, § 565.001 RSMo 1978, and was sentenced to life imprisonment. We affirm.

The sufficiency of the evidence is not challenged. A jury reasonably could find that on September 11, 1977, while highly intoxicated appellant was involved in a one-car accident. He was later taken home by his mother and the sheriff of Daviess County. Appellant's mother attempted, without success, to get him to go to bed, and the sheriff stated that he would return the following day to talk to him. After obtaining appellant's driver's license from his mother the sheriff left the house, and as he was backing his automobile out of the driveway appellant went to the sheriff's automobile and shot him three times in the head.

Prior to trial the State requested a mental examination pursuant to §§ 552.020 and 552.030, RSMo 1978. The examining doctor found, among other things, that appellant "has no mental disease or defect within the meaning of § 552.010;" that he "has the capacity to understand the proceedings against him and can assist in his own defense," and that he "did know and appreciate the nature, quality and wrongfulness of his alleged conduct and was capable of conforming his conduct to the requirements of the law." Appellant also requested and was granted a mental examination by a doctor of his own choosing, who found that appellant "has suffered mental disease for a period of years," but that "he does understand the proceedings, * * * the position of the judge, the prosecuting attorney, his own attorney and the conduct of the jury trial," and that "he did understand the nature of his action and the fact that what he had done was inappropriate and wrong." Before the trial started, appellant expressly abandoned the defense of not guilty by reason of mental disease or defect excluding responsibility. See § 552.030 RSMo 1978. However, in his opening statement to the jury appellant's counsel stated that the defense would be "that at the time of the commission of this crime, [he] was incapable or [sic] premeditation which is one of the elements that the Court will instruct you on as to the law."

The trial court gave, among others, the following instructions:

Instruction No. 8

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about the 11th day of September, 1977, in the County of Daviess, State of Missouri, the defendant caused the death of S. L. Houghton by shooting him, and

Second, that the defendant intended to take the life of S. L. Houghton, and

Third, that the defendant knew that he was practically certain to cause the death of S. L. Houghton, and

Fourth, that the defendant considered taking the life of S. L. Houghton and reflected upon this matter coolly and fully before doing so, then you will find the defendant guilty of capital murder.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of those propositions, you must find the defendant not guilty of that offense.

Instruction No. 9

If you do not find and believe from the evidence beyond a reasonable doubt each and all of the following:

First, that the defendant intended to take the life of S. L. Houghton, and

Second, that the defendant considered taking the life of S. L. Houghton, and reflected upon this matter coolly and fully before doing so,

Then you must find the defendant not guilty of capital murder.

The trial court gave instructions submitting second degree murder and manslaughter. It also gave an instruction conversing the issue of intent in the instruction submitting second degree murder.

■ Appellant's first point is that the trial court erred in giving Instruction No. 8 because it "failed to instruct the jury about Appellant's defense of mental disease or defect." As noted, appellant expressly abandoned the affirmative defense of mental disease or defect excluding responsibility, and no instruction submitting that defense was given. The statement of the point lacks appropriate clarity but from his argument it is apparent that appellant contends that Instruction No. 8 was insufficient because it, and the other instructions, did not submit the special negative defense, of which there was evidence, of "diminished mental capacity" which affected his mind so that he did not have the capacity to intend the act.

This defense is based upon the concept that mental derangement of an accused may not be of such quantity or quality to absolve him of all responsibility for his criminal actions, but may be sufficient to preclude him from having the requisite mental state for a particular offense; for example, he may lack the capacity to deliberate or premeditate. The doctrine was rejected in this State until 1963. For example, see *State v. Holloway,* 156 Mo. 222, 56 S.W. 734 (1900). In 1963 the General Assembly enacted a new mental responsibility law based upon the Model Code. See Missouri's Mental Responsibility Law. A Symposium: An analysis of the law. Richardson, Reardon and Simeone, 19 J.Mo.B. 645 (Dec. 1963); 32 M.L.Rev. 274 (1967). Included in that law is § 552.030.3(1) RSMo 1978, which gives statutory recognition to the defense relied upon by appellant. In *State v. Anderson,* 515 S.W.2d 534 (Mo. Banc 1974), this court recognized the statutory nature of the defense and held that where evidence was adduced to support such a defense it was required that the trial court instruct the jury on lesser crimes not containing the mental element or elements in dispute. The precise issue in *State v. Anderson* is not in this case because, as previously noted, the trial court did instruct the jury on murder in the second degree and on manslaughter, and the *Anderson* case did not address the question of whether the trial court must specifically instruct the jury that it may consider the evidence of "diminished mental capacity" in determining the requisite mental elements.

The trial of appellant was governed by instructions referred to as the "15.00 Series of MAI–CR," effective April 12, 1978 and applicable to all homicides committed after

May 26, 1977. Note on Use No. 7 to MAI–CR 15.00 refers to the doctrine of "diminished mental capacity," and it states that "In appropriate situations the instructions to juries must take account of this doctrine." Although in that Note it is further provided "An MAI–CR form has been or will be adopted to cover the matter mentioned in Section 552.030.3(1)" [which provided that evidence that a defendant did or did not suffer from a mental disease or defect shall be admissible to prove that he did or did not have a state of mind which is an element of the offense], no such "MAI–CR form" had been adopted by December 7, 1978, the date on which this case was submitted to the jury.[1] Therefore, the requirement at the time of the submission of this case to the jury was that "the instructions * * * must take account" of the doctrine of diminished mental capacity.

In order for the jury to find appellant guilty of capital murder they were expressly required by Instruction No. 8 to find that he "caused" the death of Sheriff Houghton by shooting him, that in doing so appellant "intended" to take his life, that he "knew" that by shooting the sheriff he was practically certain to cause his death, and finally, that he "considered taking the life" of the sheriff and "reflected upon this matter coolly and fully before doing so." The jury was then told that if they did not find and believe from the evidence beyond a reasonable doubt "each and all of those propositions, [they] must find [him] not guilty."

By Instruction No. 9, the jury was then told that if they did not find and believe "beyond a reasonable doubt" that appellant "intended to take the life" of the sheriff, and that he had not "considered taking [his] life" and had not "reflected upon this matter coolly and fully before doing so," they "must" find appellant not guilty of capital murder.

The issue of diminished mental capacity was clearly presented to the jury by the oral argument of counsel. Appellant's counsel admitted in argument that appellant "shot the sheriff three times in the head and killed him," and then stated to the jury that his defense was not that of "complete insanity," but as the examining doctor selected by appellant, Dr. Phillips, testified, "there was no way in God's green earth that [appellant] could have considered what he was about to do before he did it," and he then asked: "Do you believe beyond a reasonable doubt that what [appellant] did is the product of someone who is not suffering from some mental disease or defect?" He later argued, "The key to my side of the case and [appellant's] side of the case" is the testimony of Doctor Phillips.

In view of the instructions on lesser included offenses, as required by *State v. Anderson, supra,* and the converse instructions, supplemented by the evidence and the argument of counsel on the issue of lack of intent, the instructions did "take account" of the doctrine of diminished mental capacity as contemplated by the requirements applicable at the time of trial. See *State v. Cole,* 588 S.W.2d 94 (Mo.App.1979).

Appellant next asserts that the trial court erred in admitting into evidence Exhibit No. 1, a photograph of the head of Sheriff Houghton showing the bullet wounds which caused his death, because it "had no probative value and sought only to inflame the jury." Appellant argues that he admitted the death of Sheriff Houghton was caused by his act, and therefore "the only issue was [his] state of mind at the time of the offense," and that Exhibit No. 1 did not assist the jury in deciding that issue.

Appellant entered a plea of not guilty. Therefore, the State had the burden to cause the jury to find and believe each element of the offense submitted by the instructions. It is true that before the jury was sworn, appellant, his counsel, and his mother entered into a "stipulation" admitting that he shot and killed Sheriff Houghton, but that was to the court only and not before the jury. We do not find any such

---

1. Such a MAI–CR Form was later adopted and made effective for all trials after January 1, 1979. See MAI–CR2d 3.74, which is required to be given when supported by evidence "if requested."

admission to the jury until the argument of appellant's counsel which was after the receipt of all evidence, including Exhibit No. 1. Aside from this, if a photograph tends to prove any of the elements of the charged offense that are in issue it is admissible in evidence, *State v. Jackson*, 499 S.W.2d 467 (Mo.1973), even though it is only corroborative in nature of other testimony, or it tends to refute defense testimony. *State v. Blair*, 531 S.W.2d 755 (Mo.App.1975); *State v. Stevens*, 467 S.W.2d 10 (Mo.1971). The evidence was that appellant shot Sheriff Houghton with a derringer that could only be shot twice without reloading. Exhibit No. 1 clearly showed that the Sheriff was shot in the head three times, which necessitated a reloading of the weapon after the first or second shot was fired. For that reason the photograph was relevant to the issue of intent and deliberation; elements which in any event were not admitted in the "stipulation" to the court. There was no abuse of discretion in admitting into evidence Exhibit No. 1.

■ Appellant's final point is that the court erred in sustaining the objection of the State to testimony of Betty Cason, appellant's adoptive mother, "as to her knowledge of Appellant's mental condition," and "as to her knowledge of [his] ability to premeditate." He relies on *Underwood v. State*, 553 S.W.2d 869 (Mo.App.1977), but he does not cite to us the page in the transcript where the ruling can be found.

From our study of the transcript it appears that appellant has reference to the court's ruling in sustaining an objection to the following question: "Q. In the early morning hours of September 11th [the date of the homicide], based upon your observations of Time [Tim, the first name of appellant], do you have an opinion as to whether or not Tim deliberately and premeditatedly murdered the sheriff?"

We first note that Mrs. Cason was permitted to testify concerning appellant's behavior and conduct which would have a bearing on his mental condition. As stated in *Underwood v. State, supra,* a lay person may testify to another's mental *condition,* if

the opinion is based on adequate observation and on related supporting facts, *State v. Shipman*, 568 S.W.2d 947 (Mo.App.1978); *State v. Rose*, 249 S.W.2d 324 (Mo.1952), but it is generally held that "It is not proper for a witness to testify to a conclusion when it has the effect of answering the ultimate issue the jury is to determine." *State v. Linzia*, 412 S.W.2d 116, 120 (Mo.1967). See also, *State v. Wertz*, 191 Mo. 569, 90 S.W. 838 (1905). Neither is it proper for a lay witness to give an opinion "of the real or actual state of mind" of another person. *State v. Warren*, 317 Mo. 843, 297 S.W. 397 (1927). See also *State v. Morris*, 263 Mo. 339, 172 S.W. 603 (1915). Under the circumstances it was not prejudicial error for the court to exclude the opinion testimony of appellant's mother as to whether he "deliberately and premeditatedly" committed the murder.

The judgment is affirmed.

HIGGINS and WELLIVER, JJ., concur.

SEILER, P. J., dissents in separate dissenting opinion filed.

SEILER, Presiding Judge, dissenting.

I respectfully dissent. I do not believe the instructions did fairly take account of the doctrine of diminished mental capacity. I do not believe the quoted portions of instruction No. 8, the standard instruction on capital murder, or the converse thereof by instruction No. 9, sufficiently alerted the jury to the defense the defendant was seeking to make. This can readily be seen by examining MAI–CR2d 3.74, which provides as follows:

3.74 Mental Responsibility: Diminished Mental Capacity

Evidence that the defendant (had) (did not have) (had or did not have) a mental disease or defect may be considered by you in determining whether the defendant had or did not have the state of mind required of [*name of offense*] and set out in Instruction No. _____ as an element of that offense.

If, after considering all of the evidence, including evidence that the defendant did

or did not have a mental disease or defect, you find and believe from the evidence that the defendant engaged in the conduct submitted in Instruction No. _____ but have a reasonable doubt that he acted [*insert the mental state involved, such as "with the (purpose) (knowledge) submitted in that instruction," or "purposely," or "knowingly," or "recklessly," or "with intent to _____," or "after considering taking the life of _____ and reflecting upon this matter cooly and fully before doing so"*], then you must find the defendant not guilty of the offense of [*name of offense*] as submitted in Instruction No. _____.

Nothing in the instructions given in this case invites such direct consideration by the jury, nor does the argument of counsel supply the deficiency, particularly in view of MAI–CR 2.01, 2.02, 2.03 and 2.68, both First and Second, which tell the jury that the law it must follow is that given by the court, not counsel. Diminished mental capacity goes directly to an issue which the jury must determine in arriving at its verdict and is one of the "questions of law necessary for their information in giving their verdict". See § 546.070(4), RSMo 1978.

I realize that MAI–CR2d 3.74 was made effective for all trials after January 1, 1979, and this trial took place a few weeks prior to that date. But the principle upon which the defense rests was established long prior thereto and there is no reason why an instruction on the defense is not required when supported by the evidence and where it is clear, as here, that it was defendant's real and only defense.

In my opinion, the instructions did not fairly present defendant's defense and it was reversible error for the court not to have instructed on the theory of diminished capacity.